DeLisle Ann CODY and Aetna Casualty & Surety Company, Plaintiffs-Co-Appellants,

v.

SHEBOYGAN MACHINE COMPANY and Continental Casualty Company, Defendants-Respondents,

LAKESHORE MACHINERY, INC., and West Bend Mutual Insurance Company, Defendants-Appellants,

SHEBOYGAN LOCKE, INC., Nevada Locke, Inc., Defendants.

Supreme Court

*No. 81–939–LV. Argued January 5, 1982.—Decided July 2, 1982.*

(Also reported in 321 N.W.2d 142.)

For the defendants-appellants there were briefs by *Randall Skiles* and *Stern Law Office* of Madison, and oral argument by *Mr. Skiles.*

For the plaintiffs-co-appellants there were briefs by *Dennis E. Robertson, McCusker & Robertson, S.C.,* of Madison, and oral argument by *Dennis E. Robertson.*

For the defendants-respondents there was a brief by *John F. Jenswold, Josann M. Reynolds* and *Jenswold, Studt, Hanson, Clark & Kaufmann* of Madison, and oral argument by *John F. Jenswold.*

HEFFERNAN, J.   This is an appeal from a circuit court judgment which granted summary judgment to the defendant Sheboygan Machine Company and its insurer on the grounds that a corporation which purchases the assets of another corporation does not succeed to the predecessor corporation's liabilities for defective products.  We affirm the circuit court's judgment consistent with the rationale of *Tift v. Forage King Industries, Inc.,* 108 Wis. 2d 72, 322 N.W.2d 14 (1982), of even date hereof, and hold that the facts here, unlike those in *Tift,* do not demonstrate any continuity or identity of business organizations.

The facts reveal that DeLisle Ann Cody, an employee of Walnut Hollow Farms, was injured at work on March 21, 1979, while operating a drum sander manufactured in 1946 by the Sheboygan Machine Company.

This case and its companion case of *Tift v. Forage King Industries, Inc.,* both pose questions of the responsibility of a "successor" business to answer in tort for the manufacture (and sale) of a defective product by a predecessor.  Because similar issues arguably arose in *Tift* and this case, we granted review of the court of appeals decision in *Tift,* granted petition for bypass of the court of appeals in this case, and assigned the cases to the same calendar.

In *Tift,* we concluded that a successor business could be liable for a defective product produced by a predecessor in circumstances where the successor business was in substantial identity with the predecessor, including circumstances where the successor was a mere continuation of the predecessor, albeit in a different business organization form.

In *Tift,* we concluded that the successor, Forage King Industries, Inc., could be liable because, under the facts, it was a continuation of the predecessor business organization. The basis for finding liability was that the present organization, Forage King Industries, Inc., was in essence the same business organization that produced the defective product.

In *Tift,* the flow of continuity or identity of the business was simple, linear, and straightforward, even though the business was at various times a sole proprietorship, a partnership, and a corporation. The record also showed that the chopper box now manufactured by the defendant, Forage King Industries, Inc., was substantially the same as the allegedly defective chopper box manufactured by Wiberg's sole proprietorship and that the present organization was a continuation of the original.

We do not find analogous facts in respect to Sheboygan Machine. Accordingly, in this case we find no basis for liability. We affirm the trial court's judgment dismissing the complaint.

The undisputed facts upon which the trial court granted summary judgment are as follows:

The sander was built in 1946 by the original Sheboygan Machine Company (Sheboygan I), which sold it in 1947 to a company in Chicago. The subsequent history of the sander is unclear until it was purchased by the defendant Lakeshore Machinery, Inc., for $1,200 and resold to plaintiff's employer, Walnut Hollow Farms, on May 14, 1974, for $1,500.

The original Sheboygan Machine Company (Sheboygan I), incorporated in 1912, entered into a buy-and-sell agreement with Sheboygan Locke, Inc., dated April 30, 1962. By the terms of that agreement, Sheboygan Locke made a cash purchase of all the listed assets of Sheboygan Machine, including real estate and the name She-

boygan Machine Company. Sheboygan Machine was to retain its corporate franchise but change its name to Allester. The agreement was silent as to assumption of liabilities, and the trial court found that no assumption could be implied. There was no common identity of officers, directors, and stockholders between the two companies.

Pursuant to its agreement Sheboygan I, on May 1, 1962, changed its name to Allester, Inc., and dissolved in November 1968. The record does not show whether Allester was ever an operating organization. Also on May 1, 1962, the purchaser, Sheboygan Locke, Inc., changed its name to Sheboygan Machine Company, Inc. (Sheboygan II).

On July 9, 1974, Sheboygan II entered into a buy-and-sell agreement with Monitor Machine Company, Inc. By the terms of that agreement, Monitor made a cash purchase of certain inventory and assets of Sheboygan II, including real estate, customer lists, good will, and the name Sheboygan Machine Company, Inc. The agreement contained an express nonassumption of liabilities or obligations.

In July 1974, Sheboygan II changed its name back to Sheboygan Locke, Inc., and in March 1978 merged with Nevada Locke, Inc. Both of these defendants have been dismissed from the action. Also in July 1974, Monitor changed its name to Sheboygan Machine Company, Inc. (Sheboygan III) and presently operates under that name.

It is undisputed that, at the time Monitor bought the assets of Sheboygan II, the business of Sheboygan II was 99 percent job shop work. It never manufactured sanders. Moreover, Sheboygan III never manufactured sanders and is exclusively a job shop, doing repair work and fashioning replacement parts. Sheboygan III has on request done repair and service work on Sheboygan sanders. It manufactures custom parts for a wide variety of

machines. It constructs such parts by reconstructing broken parts or from design specification. It is a repair-parts shop and never has manufactured industrial machines such as the sander built by Sheboygan I.

Procedurally, the record shows that the plaintiff, Cody,[1] commenced suit against the present Sheboygan Machine Company, referred to above as Sheboygan III, alleging that it was the manufacturer of the allegedly defective sander, and against Lakeshore Machinery, Inc., which sold the sander, used, to Cody's employer in 1974. The complaint alleged a cause of action in strict liability.

Lakeshore denied liability and crossclaimed against Sheboygan III. The plaintiffs subsequently amended their complaint, adding a count of negligence against Sheboygan III and Lakeshore for "the manner in which they sold and serviced the subject machine."

Sheboygan III answered and denied that it manufactured, designed, or sold the sander. Sheboygan III moved for summary judgment and stated that it had never manufactured sanders and had never assumed the liabilities of any former corporation.

The plaintiffs also amended their complaint to join Sheboygan Locke and Nevada Locke, alleging they may have manufactured the defective sander. This amended complaint omitted any allegation of Sheboygan III's negligence with respect to sale and service, but contained such allegation as to Lakeshore in respect to negligent sale and service. Hence, it appears that no possible negligent conduct of Sheboygan III itself is at issue. Moreover, it appears that Lakeshore never responded to the allegations of the amended complaint. It appears then that no issue is presently before this court in respect to Lakeshore's crossclaim.

---

[1] It should be noted that Cody was joined in her suit by Aetna, her employer's compensation insurer. Apparently, compensation was paid according to the statutory schedules.

Nevada Locke (formerly Sheboygan Locke) moved for summary judgment. This motion was granted and has not been appealed. Lakeshore moved for summary judgment on the ground that it sold the sander used "as is" and could not, under those circumstances, be held strictly liable, nor could it be held to be negligent, because it had never serviced or supplied parts for the sander.

The motion of Lakeshore was denied, because the trial court held, contrary to Lakeshore's contention, that, as a matter of law, the seller of a used chattel could be held strictly liable for defects; and, in addition, the trial court concluded that there were facts in dispute regarding Lakeshore's negligence in selling and servicing the machine. Lakeshore's request for permission to appeal the nonfinal order denying its motion for summary judgment was rejected by the court of appeals. Accordingly, the correctness of that order is not before us. Lakeshore and the plaintiffs appealed the trial court's grant of summary judgment to Sheboygan III dismissing it from the action. Only Sheboygan III's possible liability is at issue on this appeal.[2]

The facts demonstrate that the last sander similar to that claimed in this action to be defective was manufactured by Sheboygan I in the late 1940's. No other organization involved in these transactions ever manufactured a sander.

The record demonstrates that the present defendant is the Sheboygan Machine Company in name only. It is simply a repair and job shop and does not manufacture, and has never manufactured, industrial machines such as a sander. Nor does the record reveal that any of the

---

[2] The legal effect of Lakeshore's crossclaim against Sheboygan III is dependent upon the liability of Sheboygan III to the plaintiff. Where Sheboygan III is, under the facts, free of liability to the plaintiff Cody, it cannot have a liability over to Lakeshore under the same set of facts.

business organizations subsequent to Sheboygan I manufactured sanders. Sheboygan III, on a job basis, has repaired or fashioned replacement parts for sanders, but there is no contention that such repaired or replacement parts are related to the defect in the sander. The allegedly defective sander was probably one of the last manufactured by the original Sheboygan Machine Company in the 1940's.

There is no identity of business organizations. *Tift* pointed out that, where it can be said that a subsequent organization is in effect the same organization, despite changes in business form, liability will attach. In the instant case, Sheboygan III was an entirely different corporation. It had in common with the original manufacturer only its name and place of business. None of the organizations subsequent to Sheboygan I resembled it in respect to general operations or in the manufacture of sanders. Its original corporate existence was dissolved after the sale of assets to Sheboygan Locke, which undertook an entirely different course of business operations.

We accordingly conclude that the trial court should be affirmed under the facts here on the basis of our analysis in *Tift*. There was no identity of business organizations. The subsequent businesses were markedly different in character and purpose from the original manufacturer. They were not continuations of the original business. Lakeshore, of course, remains in the lawsuit, and its liability has not been tried.

*By the Court.*—The judgment of the Circuit Court is affirmed.

CECI, J., took no part.

WILLIAM G. CALLOW, J. *(concurring)*. Although I concur in the result reached in this case, I do not do so on the basis of the majority analysis in *Tift v. Forage*

*King Industries, Inc.,* 108 Wis. 2d 72, 322 N.W.2d 14 (1982). The facts of this case do not fit under any exception to the sound intercorporate theory of nonliability of a successor corporation. In accordance with my dissenting opinion in *Tift,* I concur in the result reached in this case.