Norman C. PARSON, Plaintiff,

v.

ROPER WHITNEY, INC., a foreign corporation, Defendant.

No. 82–C–435–D.

United States District Court, W.D. Wisconsin.

May 22, 1984.

Richard W. White of Gillick, Murphy, Gillick & Wicht, Milwaukee, Wis., for plaintiff.

Richard Hemming of Consigny, Andrews, Hemming & Grant, Janesville, Wis., for defendant.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is a civil action for compensatory and punitive damages. Plaintiff seeks recovery for personal injuries suffered while operating a hydraulic press brake in the course of employment at Janesville Truck Equipment Corp. Jurisdiction is present under 28 U.S.C. § 1332.

This case is presently before the court on defendant Roper Whitney's motion for summary judgment. Defendant has submitted proposed findings of fact, with references to the record, and a supporting brief. Although filing a brief in opposition, apparently plaintiff has elected not to 'dispute the factual propositions presented by the defendant nor to submit any proposed findings of fact of his own. In a reply brief, defendant has presented additional facts, referenced to a joint deposition of Harold Pederson and Bernard Blomquist taken subsequent to the filing of the summary judgment motion, which clarify the factual basis for the motion. Plaintiff has not objected to this submission, despite the absence of these factual propositions from defendant's initial statement of proposed findings of fact. I shall consider these additional proposed findings as if timely filed.

I find there is no genuine issue as to those facts set out below under the heading "Facts."

## FACTS

The hydraulic press brake, allegedly causing plaintiff's injuries, was designed, manufactured and distributed by Peck, Stow & Wilcox Company, Inc., a corporation, (Peck, Stow) under the "Pexto" trademark and was part of Peck, Stow's "LVD" product line. The hydraulic press brake was manufactured and sold by Peck, Stow in 1972. The basic machine which comprises the hydraulic press brake was manufactured in Belgium by a company known as LVD, under a licensing agreement with Peck, Stow. It was then brought to the United States and Peck, Stow added the hydraulics and electrics at its Southington, Connecticut plant and marketed the machine as a Pexto product.

On September 17, 1976 defendant entered into a contractual agreement with Peck, Stow for the cash purchase of certain machineries and product lines. A bill of sale was executed on October 8, 1976. The transaction described in the agreement was a sale of assets of Peck, Stow to defendant. Under the agreement, defendant did not purchase the product line identified as the LVD product line. While defendant received records from Peck, Stow regarding the product lines it purchased, it did not receive any records relating to the licensing by Peck, Stow of the LVD press brake lines. None of the inventory, tooling or machines used for making press brakes were removed from Peck, Stow's Connecticut plant. Defendant has never utilized any of Peck, Stow's plant or other facilities. Defendant's facilities are located in Rockford, Illinois. At no time has defendant manufactured hydraulic press brakes of the kind which caused the injury to plaintiff.

Under the agreement defendant was not to be liable for any negligence attributed to the manufacture by Peck, Stow of any product or product line purchased pursuant to the agreement. Claims arising from equipment manufactured prior to October 8, 1976 were the responsibility of Peck, Stow. Claims arising from equipment manufactured after October 8, 1976 by defendant were the responsibility of the defendant. Peck, Stow has assumed respon-

sibility for all claims referred to it. Defendant has not incurred liability for any such claims.

Following the sale to defendant of certain of Peck, Stow's product lines, Peck, Stow remained in business and continued to market press brakes. Peck, Stow presently conducts business through offices in New York. Peck, Stow operates a sales office, sales department, and shipping operations, and maintains machinery and inventory.

During the summer of 1977 or early in 1978, LVD opened its own manufacturing facility in Hartford, Connecticut and engaged some of the previous Peck, Stow employees. LVD continues to manufacture and market its press brake product line and participated at the 1983 International Machine Tool trade show in Chicago.

## OPINION

■ Wisconsin law governs this transaction. Wisconsin follows the general rule of corporate law that a corporation which purchases with cash the assets of another corporation does not succeed to the liabilities of the seller. *Tift v. Forage King Industries, Inc.,* 108 Wis.2d 72, 322 N.W.2d 14 (1982); *Cody v. Sheboygan Machine Co.,* 108 Wis.2d 105, 321 N.W.2d 142 (1982). *See Leannais v. Cincinnati, Inc.,* 565 F.2d 437 (7th Cir.1977); *Forest Laboratories, Inc. v. Pillsbury Company,* 452 F.2d 621 (7th Cir.1971); *Bazan v. Kux Machine Company,* 358 F.Supp. 1250 (E.D.Wis. 1973); *National Dairy Products Corp. v. Borden Company,* 363 F.Supp. 978 (E.D. Wis.1973). *Cf. Pennison v. Chicago, M. & St. P. Ry. Co.,* 93 Wis. 344, 67 N.W. 702 (1896). This rule is subject to four well-recognized exceptions: (1) the purchasing corporation expressly or impliedly agrees to assume the liabilities of the seller; (2) the transaction amounts to a consolidation or merger of the two companies; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape liability. *Leannais v. Cincinnati Inc.,* 565 F.2d 437; *Tift v. Forage King Industries, Inc.,* 108 Wis.2d 72, 322 N.W.2d 14. The present case clearly falls within

neither exception (1) nor (4). For defendant Roper Whitney, Inc., to be held liable to plaintiff for his injuries, either exception (2) or (3) must be applied: there must have been either a consolidation or merger, or a continuation of Peck, Stow in Roper Whitney, Inc.

Exceptions (2) and (3) are tests of identity under which the substance and effect of business transformations are examined "to determine whether the original organization continues to have life or identity in a subsequent and existing organization .... [E]xceptions [(2) and (3)] are guidelines to determine under what circumstances the original entity continues to exist, albeit in an altered form .... A court merely need determine that the defendant, despite business transformations, is substantially the same as the original manufacturer." *Tift v. Forage King Industries, Inc.,* 108 Wis.2d at 79, 322 N.W.2d 14.

### *Exception (2)—Consolidation or Merger*

■ In a consolidation, two or more corporations are dissolved and reincorporated under a new corporate identity. A merger involves the absorption of one corporation into the other, with the former losing its separate corporate entity. In both a merger and consolidation, a transfer of stock occurs and there is a fundamental change in the relationship of the shareholders to their respective corporations. *Travis v. Harris Corp.,* 565 F.2d 443 (7th Cir. 1977); *Lopata v. Bemis,* 383 F.Supp. 342 (E.D.Pa.1974).

■ A de facto merger may be found where: (1) the assets of the seller corporation are acquired with shares of the stock in the buyer corporation, resulting in a continuity of shareholders; (2) the seller ceases operations and dissolves soon after the sale; (3) the buyer continues the enterprise of the seller corporation so that there is a continuity of management, employees, business location, assets and general business operations; and (4) the buyer assumes those liabilities of the seller necessary for the uninterrupted continuation of normal business operations. *Shannon v. Samuel Langston Company,* 379 F.Supp. 797, 801 (W.D.Mich.1974).

■ In the present case, defendant Roper Whitney, Inc. paid cash to Peck, Stow for its machineries and product lines. Peck, Stow has remained in business. The transaction between Roper Whitney, Inc. and Peck, Stow did not constitute a consolidation, a de jure merger, or a de facto merger.

*Exception (3)—Purchaser a Continuation of Seller*

Although well-recognized, the "continuation" exception is less clearly defined than the other three. Case by case, the presence or absence of a continuation has been searched out in the particular circumstances. The facts in the present case are such that plaintiff is obliged to contend that a continuation may be inferred solely from the defendant's purchase and subsequent manufacture of certain of Peck, Stow's product lines. This contention is not consistent with a prominent theme in decisions exploring the application of exception (3) in Wisconsin. For example, in *Armour-Dial, Inc. v. Alkar Engineering Corp.,* 469 F.Supp. 1198 (E.D.Wis.1979), it was said that the purchaser corporation's continuation of the manufacturing operations of the seller corporation does not in itself make the purchaser a continuation of the seller, and in *National Dairy Products Corp. v. Borden Company,* 363 F.Supp. 978, it was said that the test is not the continuation of the business operations, but the continuation of the corporate entity. In cases where a purchasing corporation has been found to be a continuation of the seller, except for a change in ownership, the purchaser has represented "merely a 'new hat' for the seller" and has been a reincarnation of the original corporation. *Armour-Dial Inc. v. Alkar Engineering Corp.,* 469 F.Supp. at 1201, *citing McKee v. Harris Co.,* 264 A.2d 98, 106 (N.J.1970). "The key element of a 'continuation' is a common identity of the officers, directors and stockholders in the selling and purchasing corporations." *Leannais v. Cincinnati, Inc.,* 565 F.2d at 441.

In the present case Peck, Stow and Roper Whitney were wholly separate and distinct entities as they entered into the purchase agreement and they remained wholly separate and distinct as they emerged. The key factor necessary to meet exception (3), as it is usually defined, is absent. The general rule would appear to apply and the defendant, as the purchaser corporation, would not be liable to this plaintiff for the allegedly defective condition of the press brake manufactured and sold by Peck, Stow, the seller corporation.

However, in recent years, in the context of products liability litigation and particularly in the context of the theory of strict liability, there has been some improvisation in some states in the application of the general rule, whether expressed as a departure from the rule and its four exceptions or as a refinement of one or more of the exceptions. *See Cyr v. B. Offen & Co.,* 501 F.2d 1145 (1st Cir.1974) (New Hampshire); *Ray v. Alad Corp.,* 19 Cal.3d 22, 136 Cal. Rptr. 574, 560 P.2d 3 (Cal.1977); *Turner v. Bituminous Cas. Co.,* 397 Mich. 406, 244 N.W.2d 873 (1976). The intent behind such modifications is to protect consumers by expanding the field of candidates for liability for injuries resulting from dangerous defects in products. *See Tift v. Forage King Industries, Inc.,* 108 Wis.2d 72, 91–104, 322 N.W.2d 14 (Callow, J. dissenting).

Plaintiff argues that *Tift v. Forage King Industries* represents such a modification and reflects an intent by the Wisconsin Supreme Court to redefine the continuation exception by eliminating the requirement of identity between shareholders, directors and officers of the two corporations and by focusing instead upon the successor corporation's continuation of the predecessor's manufacturing operations and products.

The plaintiff in *Tift* was injured in 1975 by a chopper box manufactured in 1961 or 1962 by Nedland Forage King, a sole proprietorship owned and operated by Wiberg.[1] In 1968 Wiberg formed a partner-

---

1. Wiberg had purchased the sole proprietorship in 1957 from Nedland, who had also operated it as a sole proprietorship.

ship with Nedland which shortly thereafter "metamorphosed" into a corporation (108 Wis.2d at 74, quoting the trial judge); Forage King Industries, Inc., with Wiberg and Nedland as the sole shareholders. The corporation retained the same employees, manufactured identical products and sold to the same dealers as had the previous sole proprietorship, changing only in its business form. Late in 1968 Nedland sold his shares to Wiberg but remained as director of the corporation for several years. In 1975, Tester Corporation purchased from Wiberg all of the stock of Forage King Industries, Inc. Forage King Industries, Inc. remained at the same location and continued to manufacture substantially the same products, including chopper boxes.

In his suit for damages Tift joined as defendants not only Wiberg and Nedland, but Forage King Industries, Inc., and its insurer. In granting summary judgment dismissing Forage King Industries, Inc., the trial court looked to the general rule of non-liability of successor corporations and its four exceptions. Finding none of the exceptions applicable, the trial court placed heavy emphasis upon the fact that the chopper box had been built by a sole proprietorship, and it concluded that Forage King Industries, Inc., could not be a successor corporation to a non-corporation. The court of appeals followed the same reasoning in affirming dismissal.

This reasoning was rejected by the Supreme Court: "[T]he responsibility of a subsequent business organization, irrespective of the nature of either the predecessor or successor, proprietorship, partnership, or corporation, cannot be facilely dismissed on the basis of the semantics of the rule .... We hold as a matter of law that the rule and its exceptions are applicable, irrespective of whether a prior organization was a corporation or a different form of business organization." 108 Wis.2d at 76, 77. The court held that under either exception (2) or (3), Forage King Industries, Inc., was the same organization as the Wiberg

sole proprietorship, "*i.e.*, it has substantially the same identity although transformed by merger, consolidation, etc." 108 Wis.2d at 79, 322 N.W.2d 14. Only the form of business organization had changed.

Under the familiar rule of corporate law, product liability can be imposed under certain circumstances upon a corporation, which is link number two in a chain, when link number one (the manufacturer) is also a corporation. The big question addressed by the Supreme Court of Wisconsin in *Tift* is whether product liability can be imposed under any circumstances upon a corporation which is link number two in a chain, when link number one (the manufacturer) is not a corporation, but a sole proprietorship. The court answered yes.

The court might have reached that result in *Tift* in a number of ways. It chose to attempt to adapt the rule for corporation-corporation relationships, including exception (3), to a sole proprietorship-corporation relationship. Direct application of exception (3) is a simple impossibility, of course, because a sole proprietorship has no stockholders or directors. Faced with this difficulty, the court looked both to the factor of continuity of the ownership and management of one business organizational entity in another and to the distinct factor of continuity of the business operations of one by the other. In *Tift* both factors strongly supported the imposition of liability upon Forage King Industries, Inc. First, the role of Wiberg in the sole proprietorship found a complete counterpart in the roles of Wiberg and Nedland in the successor partnership. Their roles in the partnership found a complete counterpart in their roles as the sole stockholders in the successor corporation, Forage King Industries, Inc. Thus, the sole proprietorship which manufactured the allegedly defective chopper box found a complete counterpart in the corporation.[2] There was clear continuity of ownership and management. Second, once formed, the corporation manufactured the very products manufactured by the sole

2. Clearly, the subsequent sales of Nedland's stock to Wiberg, and of Wiberg's stock to Tester, had no effect on the continuing identity of Forage King Industries, Inc., once it had been incorporated.

**1452**

proprietorship and partnership, and sold them to the same dealers. There was clear continuity of the business operations.

The central holding in *Tift*—that defective production by a sole proprietorship can give rise to the subsequent liability of a corporation—is of no significance to the present case involving two corporations. It is true that in *Tift*, frequent reference was made to the total continuity of business operations present there. 108 Wis.2d at 73, 74, 75, 80, 322 N.W.2d 14. The vital question in the present case, however, is whether, in the course of addressing the special aspects of a sole proprietorship-corporation sequence, the Supreme Court of Wisconsin intended to pronounce that in a corporation-corporation sequence, liability can be imposed on the purchaser corporation under exceptions (2) or (3) in the complete absence of continuity in stockholders, directors, and officers. I am unwilling to conclude that the court intended to pronounce so major a change so obscurely.

In *Cody v. Sheboygan Machine Co.*, 108 Wis.2d 105, 321 N.W.2d 142, decided on the same day as *Tift*, both the defendant and the original manufacturer organizations were corporations. The defendant corporation had in common with the original manufacturer corporation only its name and place of business. There was no continuity of shareholders, directors or officers. There was no continuity of business operations. The court held that the defendant corporation could not be said to be a continuation of the manufacturer-corporation, that exception (3) was inapplicable, and that liability would not attach. The holding in *Cody* represents a straightforward application of the general corporate rule of non-succession by the buying corporation to the liabilities of a selling corporation, including a straightforward declination to apply exception (3).

I am aware that in evaluating the classic corporation-corporation sequence in *Cody*, the court made frequent reference to the sole proprietorship-corporation sequence in *Tift*, and that it referred to the absence of continuity in business operations in *Cody*, 108 Wis.2d at 107, 108–109, 110, 111, 321 N.W.2d 142, as well as to the absence of

continuity in stockholders, directors and officers. But in *Cody*, there is no intimation whatever that exception (3) can apply in a corporation-corporation sequence when there is no continuity in stockholders, directors, and officers.

██ Finally, even if *Tift* and *Cody* are read to announce that in the complete absence of continuity of stockholders, directors, and officers, a purchasing corporation succeeds to the liability of a selling corporation when the business operations are continued, liability would not attach in the present case in which: the product lines purchased by defendant Roper Whitney, Inc. from Peck, Stow did not include the LVD hydraulic press brakes in question; defendant has not manufactured hydraulic press brakes of the kind (LVD) which allegedly caused the injury to this plaintiff; LVD itself continues to manufacture and market its press brake product line; and Peck, Stow remains an active business entity.

### ORDER

Defendant Roper Whitney, Inc.'s motion for summary judgment is granted.

It is ordered that the clerk of court enter judgment dismissing this action on its merits as against defendant Roper Whitney, Inc.