**David DAYTON, Plaintiff, Appellant,**

v.

**PECK, STOW AND WILCOX CO. (PEXTO), et al., Defendants, Appellees.**

**No. 83–1415.**

United States Court of Appeals,
First Circuit.

Argued June 4, 1984.

Decided July 30, 1984.

---

Thomas D. O'Brien, Boston, Mass., for plaintiff, appellant.

Cynthia J. Cohen, Boston, Mass., with whom John W. Brister, Andre A. Sansoucy, Parker, Coulter, Daley & White, and Philander S. Ratzkoff, Boston, Mass., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, STEWART,* Associate Justice (Retired), and BOWNES, Circuit Judge.

BOWNES, Circuit Judge.

Plaintiff-appellant brought this product liability suit for personal injuries he suffered in 1976 while operating a metal shearing machine manufactured by Peck, Stow & Wilcox Co. (PSW–1). Appellees Veeder Industries, Inc. (Veeder) and Western Pacific Industries, Inc. (Western Pacific) are two of the four defendant corporations from which appellant seeks to recover damages. Jurisdiction is based on diversity of citizenship. The district court granted the motions of both appellees for summary judgment on the ground that neither corporation was liable as PSW–1's successor under Massachusetts law for appellant's injury. We affirm.

The material facts are undisputed. The metal shear in question was manufactured by PSW–1 in 1957 and sold no later than August, 1958. In 1963 PSW–1's assets were purchased for cash by Veeder-Root, Inc., a corporation formed in 1928 which had not previously manufactured or marketed metal shear machinery. The purchase agreement between Veeder-Root and PSW–1's parent corporation expressly pro-

---

* Of the Supreme Court of the United States, sitting by designation.

vided that Veeder-Root would not be liable for "any claims predicated upon negligence ... [or] any claimed damages which are usually referred to as either 'special' or 'consequential' or flow from that type of claim known as a product liability claim." As part of the transaction, Veeder-Root set up a new corporation, Peck, Stow & Wilcox Co. (PSW–2), to carry on the business of PSW–1. The shareholders, officers and directors of PSW–1 did not become shareholders, officers or directors of PSW–2. In 1966 Veeder-Root merged with PSW–2; the metal shear business was carried on by Veeder-Root's Peck, Stow & Wilcox Division. In the same year, Veeder-Root changed its name to Veeder Industries, Inc. (Veeder).

In 1975 Veeder sold all the assets of its Peck, Stow & Wilcox Division to P.S. & W. Co. (PSW–3), a corporation formed to make the purchase. As part of the sales agreement, Veeder agreed to retain responsibility for liabilities arising from products manufactured or sold by its Peck, Stow & Wilcox Division before December 1, 1975. With this transaction, Veeder's involvement with the manufacture and sale of metal shear machinery ceased.

In 1976 Western Pacific acquired all of Veeder's stock and Veeder became a wholly owned subsidiary of Western Pacific. Western Pacific presently exists only as a holding company, and has never been involved with the manufacture or sale of metal shear machinery.

The general rule in the majority of American jurisdictions, including Massachusetts, is that "a company which purchases the assets of another company is not liable for the debts and liabilities of the transferor." *Araserv, Inc. v. Bay State Harness Horse*

*Racing and Breeding Association, Inc.*, 437 F.Supp. 1083, 1089 (D.Mass.1977). The general rule is subject to four well-recognized exceptions permitting liability to be imposed on the purchasing corporation:

(1) when the purchasing corporation expressly or impliedly agreed to assume the selling corporation's liability; (2) when the transaction amounts to a consolidation or merger of the purchaser and seller corporations; (3) when the purchaser corporation is merely a continuation of the seller corporation; or (4) when the transaction is entered into fraudulently to escape liability for such obligations.

*Leannais v. Cincinnati, Inc.*, 565 F.2d 437, 439 (7th Cir.1977); *see also Araserv*, 437 F.Supp. at 1089–90 [1]; 15 Fletcher, Cyclopedia of the Law of Private Corporations §§ 7122–23. Appellant has the burden of alleging facts which bring Veeder and Western Pacific within one of these exceptions; if he fails to do so, summary judgment is appropriate. *Verhein v. South Bend Lathe, Inc.*, 448 F.Supp. 259, 260–61 (E.D.Wis.1978), *aff'd*, 598 F.2d 1061, 1062–63 (7th Cir.1979).

There is no indication in the record that either Veeder or Western Pacific agreed to assume liability for injuries caused by metal shears manufactured and sold by PSW–1; indeed, the 1963 sales agreement between Veeder-Root and PSW–1's parent corporation made express provisions to the contrary.[2] Nor has appellant suggested that any of the transactions involving PSW–1's assets was in any way fraudulent or not in good faith. *See* Fed.R.Civ.P. 9(b). Thus, only the "merger" and "mere continuation" exceptions to the general rule of nonliability are implicated.

---

**1.** In *Araserv,* the court cited a fifth exception applicable where "some of the elements of a purchaser in good faith were absent," 437 F.Supp. at 1089–90, *citing Cyr v. B. Offen & Co., Inc.,* 501 F.2d 1145, 1152 (1st Cir.1974); the court correctly inferred that this, along with the provision concerning fraudulent transactions, was encompassed by the fourth enumerated exception quoted in the text. *Araserv,* 437 F.Supp. at 1090.

**2.** Appellant alleged in his complaint that Western Pacific "purchased all of the assets and assumed the liabilities of the defendant Peck, Stow & Wilcox Co. (Pexto) through its subsidiary or division, Veeder Industries." There is no factual support for this conclusory statement in the affidavits, and it does not create a triable issue of fact. *Over The Road Drivers, Inc. v. Transport Insurance Co.,* 637 F.2d 816, 819 (1st Cir.1980).

One of the key requirements for a merger under traditional corporation law doctrine is "continuity of shareholders," which is found where the purchaser corporation exchanges its own stock as consideration for the seller corporation's assets so that the shareholders of the seller corporation become a constituent part of the purchaser corporation. *Shannon v. Samuel Langston Co.*, 379 F.Supp. 797, 801 (W.D. Mich.1974), *citing McKee v. Harris-Seybold Co.*, 109 N.J.Super. 555, 264 A.2d 98 (1970), *aff'd*, 118 N.J.Super. 480, 288 A.2d 585 (1972). The 1963 purchase of PSW–1's assets for cash by Veeder left the relationship of the shareholders to their respective corporations unchanged, and thus did not constitute a merger. *Travis v. Harris Corp.*, 565 F.2d 443, 447 (7th Cir.1977). Even were we to accept the view that the absence of an exchange of stock for assets is not conclusive but rather "should be one factor to use to determine whether there exists a sufficient nexus between the successor and predecessor corporations to establish successor liability," *Turner v. Bituminous Casualty Co.*, 397 Mich. 406, 244 N.W.2d 873, 880 (1976),[3] the 1963 transaction cannot as a matter of law be viewed as a merger because the record shows that the requisite "continuity of management" was lacking. *Shannon*, 379 F.Supp. at 801. Moreover, appellant has failed to allege still another prerequisite for a merger, *viz.* that PSW–1 "cease[d] its ordinary business operations, liquidate[d], and dissolve[d] as soon as legally and practically possible." *Id.*

For similar reasons, Veeder's 1963 purchase of PSW–1's assets for cash does not bring this case within the "mere continuation" exception to the general rule of nonliability. "The key element of a 'continuation' is a common identity of the officers, directors and stockholders in the selling and purchasing corporations." *Leannais*, 565 F.2d at 440; *see also Tucker v. Paxson*

*Machine Co.*, 645 F.2d 620, 625–26 (8th Cir.1981); *Parson v. Roper Whitney, Inc.*, 586 F.Supp. 1447, at 1450 (W.D.Wis.1984) (order granting summary judgment); *Weaver v. Nash International, Inc.*, 562 F.Supp. 860, 863 (S.D.Iowa 1983). Because there was no continuity of shareholders or management, the general rule, if applied according to its terms, would preclude liability as a matter of law.

Appellant, however, relying on our decision in *Cyr v. B. Offen & Co., Inc.*, 501 F.2d 1145 (1st Cir.1974), contends that Veeder may be viewed as a mere continuation of PSW–1 under a relaxed standard. In *Cyr* the employees of a sole proprietorship purchased the business upon the death of the owner, and continued to run the business, producing the same products in the same way with the same personnel as before the change of ownership. The sales contract required that business practices and policies be pursued unchanged; the assets and liabilities of the sole proprietorship were apparently assumed in toto; and the new corporation held itself out as an ongoing enterprise. On these compelling and rather unusual facts, noting that "facial and substantial continuity were the essence of the bargain," *id.* at 1152, we held that under New Hampshire law the successor corporation could be held liable for an injury caused by a product of the predecessor sole proprietorship. *Id.* at 1150–54. *Cf. Tift v. Forage King Industries, Inc.*, 108 Wis.2d 72, 322 N.W.2d 14 (1982) (applying "mere continuation" exception to corporate successor of sole proprietorship). Our *Cyr* decision has been viewed as an "improvisation" on the theme of the "mere continuation" exception, *Parson*, at 1450; but it has not altered the key in which the theme is treated. The indicia of continuity in the present case are nowhere near as strong and pervasive as in *Cyr*, and it would strain the rationale of that decision to apply it here. The district court was correct in

---

**3.** The *Turner* decision has been much criticized on the ground that it leads to inconsistent results when applied by different courts to the same corporate genealogy. *Ramirez v. Amsted Industries, Inc.*, 86 N.J. 332, 431 A.2d 811, 819 & n. 2 (1981); *see also Manh Hung Nguyen v.* *Johnson Machine & Press Corp.*, 104 Ill.App.3d 1141, 60 Ill.Dec. 866, 433 N.E.2d 1104, 1107–12 (1982) (criticism on policy grounds). Because we do not apply *Turner*, we need not evaluate its strengths and weaknesses here.

distinguishing *Cyr* on its facts and holding that appellant failed to allege facts which would bring the 1963 transaction within the "mere continuation" or any other exception to the general rule of nonliability.

Appellant urges us to import into Massachusetts law the "product line" theory developed in *Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977). In *Ray* the successor corporation purchased the predecessor corporation's entire assets, including goodwill, for cash, and continued to manufacture the same product line under the same name, using the same equipment, designs, and personnel, and soliciting the same customers through the same sales representatives with no outward indication of any change in ownership; the predecessor corporation was dissolved. The California court, recognizing that none of the conventional exceptions to the rule of nonliability was applicable, nevertheless found the successor corporation strictly liable on the basis of three products liability policy considerations:

> (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading r[o]le, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business.

*Id.* 136 Cal.Rptr. at 580, 560 P.2d at 9. Under the "narrow circumstances" of the case, *id.* 136 Cal.Rptr. at 576, 560 P.2d at 5,

the court concluded that "a party which acquires a manufacturing business and continues the output of its line of products ... assumes strict tort liability for defects in units of the same product line previously manufactured and distributed by the entity from which the business was acquired." *Id.* 136 Cal.Rptr. at 582, 560 P.2d at 11.[4] Although a few jurisdictions have adopted the holding and rationale of *Ray*, *see Ramirez v. Amsted Industries, Inc.*, 86 N.J. 332, 431 A.2d 811 (1981); *Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106 (1981), the majority appear to adhere to the traditional rule. *See Weaver*, 562 F.Supp. at 863–64 (applying Iowa law); *Jones v. Johnson Machine & Press Co.*, 211 Neb. 724, 320 N.W.2d 481, 484 (1982); *Bernard v. Kee Manufacturing Co.*, 409 So.2d 1047, 1049–51 (Fla.1982); *Tucker*, 645 F.2d at 624–25 (applying Missouri law); *Rhynes v. Branick Manufacturing Corp.*, 629 F.2d 409, 410 (5th Cir.1980) (applying Texas law); *Domine v. Fulton Iron Works*, 76 Ill.App.3d 253, 32 Ill.Dec. 72, 395 N.E.2d 19, 23–24 (1979); *Leannais*, 565 F.2d at 441 (applying Wisconsin law).

Quite apart from the weight of authority in other jurisdictions, we are in a particularly poor position, sitting as a federal court in a diversity case, to endorse the fundamental policy innovation implicit in the product line theory. Absent some authoritative signal from the legislature or the courts of Massachusetts, we see no basis for even considering the pros and cons of innovative theories of successor corporate liability.[5] We must apply the law of the forum as we infer it presently to be, not as it might come to be. Although Massachusetts authority is sparse, we see no basis for applying any rule other than

**4.** The narrow holding in *Ray* is not necessarily applicable to the situation before us in which Veeder acquired the product line and manufactured it for several years but did not continue to do so at the time of appellant's injury. A few courts would apparently extend the *Ray* holding to *intermediate* successor corporations such as Veeder, *see Nieves v. Bruno Sherman Corp.*, 86 N.J. 361, 431 A.2d 826, 831–32 (1981); *Trimper v. Harris Corp.*, 441 F.Supp. 346 (E.D.Mich. 1977). Because we do not apply the underlying rationale of *Ray* in the present case, however, we need not examine its potential scope. We

note, moreover, that the ultimate successor corporation which currently manufactures the product line in question is a named defendant in this suit.

**5.** Appellant directs our attention to an unpublished memorandum and order of the Massachusetts Superior Court denying successor corporations' motions for summary judgment on the basis of the product line theory. *Perez v. Amsted Industries, Inc.*, No. 57728 (Mass.Super.Ct. Apr. 20, 1984). Such an order does not rise to the level of persuasive, let alone binding,

the traditional one.[6] *See Araserv,* 437 F.Supp. at 1089–91 (applying traditional rule to contract liability); *Pittsfield General Hospital v. Markus,* 355 Mass. 519, 246 N.E.2d 444, 445–46 (1969) (applying traditional rule where corporation succeeded partnership); *cf. Swartz v. General Motors Corp.,* 378 Mass. 628, 378 N.E.2d 61, 62 (1978) (refusing to adopt common-law strict liability where legislature created warranty remedy).

Under the traditional majority rule, we conclude that appellant failed to meet his burden of producing evidence that Veeder became liable for appellant's injury, either in 1963 when it purchased PSW–1's assets or thereafter. There is likewise no showing that Western Pacific became liable for appellant's injury on any theory when it acquired Veeder as a subsidiary in 1976. Summary judgment was therefore proper with respect to both appellees.

*Affirmed.*

precedential authority and we refuse to hinge our interpretation of existing Massachusetts law on it. Indeed, the order in *Perez* appears to conflict with the prevalent approach followed in another Massachusetts Superior Court case. *See Segelman v. Amsted Industries, Inc.,* No. 666783 (Mass.Super.Ct. Oct. 18, 1978) (order granting summary judgment in favor of successor corporation).

6. We raised sua sponte the question whether the issue of successor corporate liability should be certified to the Massachusetts Supreme Judicial Court. After full consideration, we think certification would be inappropriate. *See Venezia v. Miller Brewing Co.,* 626 F.2d 188, 192 n. 5 (1st Cir.1980), *citing Cantwell v. University of Massachusetts,* 551 F.2d 879, 880 (1st Cir.1977).