METROPOLITAN LIFE INS. CO.

v.

ROBERTSON–CECO CORP., and United Dominion Industries, Inc.

Civ. A. No. 5:93–CV–259.

United States District Court, D. Vermont.

March 14, 1995.

David W.M. Conard, Portnow, Little & Cicchetti, Burlington, VT, and, J. Mark Brewer, Patrick Gaas, Brewer and Pritchard, Houston, TX, for plaintiff.

Bryan Cave, St. Louis, MO, for defendant Robertson–Ceco Corp.

Thomas P. Aicher, David L. Cleary Associates, Rutland, VT, for defendant United Dominion.

## ORDER

BILLINGS, Senior District Judge.

Currently before the Court is a Motion For Summary Judgment submitted by Defendant United Dominion Industries, Ltd. ("United Dominion"). Plaintiff Metropolitan Life Insurance Co. ("Metlife") has filed opposition to the Motion.

### Factual Background

This case involves the alleged failure of a fabricated curtain wall system at the Flagship Bank building in Miami, Florida. Construction on the building was completed in 1981, and Metlife purchased the building in 1984. Sometime thereafter, the stainless steel panels of the wall system became delaminated and apparently began to debond from the adhesive that maintained their stability. Metlife subsequently filed this suit against Defendant Robertson–Ceco Corporation ("Robertson–Ceco"), claiming that the allegedly defective curtain wall system was manufactured by the Cupples Building Products Division ("Cupples"), an unincorporated division of Robertson–Ceco.[1] Metlife named United Dominion as an additional defendant on a "corporate successor liability" theory, alleging that United Dominion was liable for the allegedly defective wall system by virtue of its purchase of certain Robertson–Ceco assets in 1991.

The legally significant facts are for the most part undisputed. Cupples was responsible for the design, production and distribution of curtain wall systems of the type in dispute here. Cupples conducted much of the research, design, and decision making pertaining to the curtain walls at Robertson's Technical Center (the "tech center") in Ambridge, Pennsylvania. It was at the tech center that employees of Robertson–Ceco

---

1. In an Order dated August 5, 1994, the Court granted summary judgment in favor of Robertson–Ceco for lack of personal jurisdiction. Thus, Metlife's claim against United Dominion is the only remaining issue in the case.

and of the H.H. Robertson Corporation (the predecessor of Robertson–Ceco) made several significant decisions concerning the fabrication of the stainless steel panels in the curtain wall system. At that location, Robertson–Ceco chose to use dissimilar metals to construct the panels, selected a particular type of primer, and reached final conclusions on the composition and construction of core, surface and adhesive materials. Metlife claims that these decisions ultimately caused the failure of the curtain wall system at the Flagship Building.

Regardless of the causation claim's merit, Metlife does not dispute that Cupples manufactured the curtain wall system for the Flagship Building at its facility in St. Louis, Missouri sometime between 1979 and 1981. United Dominion had no relationship with Robertson–Ceco at that time; thus, United Dominion was not involved in the design, production or distribution of the curtain wall system that Cupples built for the Flagship Building.

In 1991, United Dominion purchased approximately $135 million of Robertson–Ceco's assets. Although the purchase included the tech center, United Dominion did not purchase the Cupples Products Division or any of its assets. Rather, Cupples survived the purchase fully intact, and it continues to operate as an unincorporated division of Robertson–Ceco, just as it did before the acquisition.

Problems with the curtain wall developed sometime after the 1991 purchase. The panels in the wall system began to delaminate and debond, apparently because they lacked the water resistant qualities necessary to prevent such deterioration. Metlife subsequently instituted this action against Robertson–Ceco and United Dominion, alleging that the faulty design and construction of the wall system was responsible for the damage to the Flagship Building.

**2.** Metlife also argues that such modern trends in the law of corporate successor liability as the "product line" theory and the "continuity of enterprise" theory support holding United Dominion liable for the allegedly defective work that Cupples preformed for the Flagship Building.

United Dominion argues in its Motion for Summary Judgment that it cannot be held liable for Cupples' actions. United Dominion points out that it had no relationship with Cupples, H.H. Robertson, or Robertson–Ceco when the disputed panels were designed, manufactured, and produced. Further, United Dominion asserts, it acquired no interest in Cupples when it purchased certain Robertson–Ceco assets, and it currently maintains no interest in, or relationship with, Cupples. Instead, observes United Dominion, Cupples continues to operate as an unincorporated subdivision of Robertson–Ceco. In light of these facts, concludes United Dominion, there is no legal theory to support holding it liable for Cupples' or Robertson–Ceco's allegedly faulty workmanship on the curtain wall.

Despite the fact that the designer and manufacturer of its building walls is available for suit, Metlife contends that it may also sue United Dominion for the damage at the Flagship Building. Metlife concedes that Cupples constructed the curtain wall system in dispute and that the 1991 purchase did not encompass Cupples or any of its assets. Nevertheless, Metlife argues that these factors are not dispositive because of the significant role that the tech center played in the facts and circumstances giving rise to the panel failure. Because a great deal of relevant conduct took place at the tech center, Metlife urges the Court to overlook the non-purchase of Cupples and instead proceed to determine whether the assets that United Dominion did acquire in the 1991 purchase were sufficient to impose liability on it for Cupples' allegedly defective manufacture and design.[2]

### Discussion

Summary judgment is appropriate when the Court finds that there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,*

We need not reach those arguments, however, in view of our conclusion that the case is resolved by the fact that United Dominion never purchased any corporate entity that was responsible for the alleged defects in the Flagship Building.

477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The party opposing summary judgment may not rest on its pleading but must present "significant probative evidence" demonstrating that a genuine dispute of material fact exists, and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The Court must view these materials in the light most favorable to the non-movant, drawing all reasonable inferences in the non-movant's favor. *Id.* at 255, 106 S.Ct. at 2513–14. When this standard is applied to the present case, it is clear that there are no genuine issues of material fact and that United Dominion is entitled to judgment as a matter of law.

■ The general rule followed by a majority of jurisdictions is that a company which purchases the assets of another company is not liable for the debts and liabilities of the transferor. *Santa Maria v. Owens–Illinois, Inc.,* 808 F.2d 848, 856 (1st Cir.1986) (citing *Araserv, Inc. v. Bay State Harness Horse Racing and Breeding Ass'n, Inc.,* 437 F.Supp. 1083, 1089 (D.Mass.1977)). *See also Wallace v. Dorsey Trailers Southeast, Inc.,* 849 F.2d 341, 343 (8th Cir.1988); *Leannis v. Cincinnati, Inc.,* 565 F.2d 437, 439 (7th Cir. 1977); *Schumacher v. Richards Shear Co.,* 59 N.Y.2d 239, 464 N.Y.S.2d 437, 439–40, 451 N.E.2d 195, 198 (1983). The general rule is subject to four well recognized exceptions that permit liability to be imposed on the successor company when: (1) the successor company expressly or impliedly agrees to assume the transferor company's liability; (2) the transaction amounts to a consolidation or merger of the successor and transferor corporations; (3) the successor corporation is merely a continuation of the transferor corporation; or (4) the transaction is a fraudulent attempt to escape liability. *Santa Maria,* 808 F.2d at 856 (citing *Dayton v. Peck, Stow & Wilcox Co. (Pexto),* 739 F.2d 690, 692 (1st Cir.1984)). The party seeking to estab-lish corporate successor liability bears the burden of alleging facts which bring the transaction within one of the four enumerated exceptions. *Id.* Applying these rules to the facts of this case, it is evident that Metlife has failed, as a matter of law, to establish facts under which United Dominion can be held liable as a corporate successor.

■ It is axiomatic that to establish corporate successor liability there must, in fact, be a corporate successor. As Metlife concedes, the allegedly defective curtain wall system was designed, manufactured and distributed by Robertson–Ceco and Cupples, acting through their respective employees. Metlife also concedes that, although United Dominion did purchase assets from Robertson–Ceco, it purchased only a minority of Robertson–Ceco's divisions, and it did not purchase any interest in Cupples.[3]

It is important in this regard that both Robertson–Ceco and Cupples survived the 1991 purchase as fully viable, going concerns. *See Wallace,* 849 F.2d at 343 (under Missouri law, corporate successor liability may attach only where successor acquires all of transferor's assets); *Santa Maria,* 808 F.2d at 861–62 (continuing existence of transferor company after the transaction may decisively weigh against imposition of successor liability). Robertson–Ceco and Cupples continued to conduct business after the transaction, and each remained (and continues to remain, as is evidenced by the fact that Metlife has also sued Robertson–Ceco in this action) amenable to suit for any damage they may have caused to Metlife. As this discussion indicates, United Dominion never actually purchased or "succeeded to" either Robertson–Ceco or Cupples, the entities responsible for the alleged defects at the Flagship Building. Since United Dominion never succeeded to the corporate entity responsible for the alleged building defects, United Dominion may

---

**3.** The Court rejects Metlife's argument that United Dominion's purchase of the tech center provides a basis for corporate successor liability. The tech center was merely the location at which Robertson–Ceco and H.H. Robertson employees made some of the research and manufacturing decisions regarding curtain walls. Metlife has cited no authority, and the Court is aware of none, which supports imposing corporate successor liability merely because a successor company acquired a particular physical facility from a transferor company.

not, as a matter of law, be held liable as a corporate successor.[4]

### CONCLUSION

Based on the foregoing, the Court finds that Metlife has presented no facts that would warrant imposition of corporate successor liability on United Dominion. As a result, the Court concludes that there are no genuine issues of material fact and that United Dominion is entitled to judgment as a matter of law. Consequently, Defendant United Dominion's Motion for Summary Judgment is hereby GRANTED.

SO ORDERED.

---

**Michael ROSSI, an infant by his guardian ad litem, Eileen ROSSI; Eileen Rossi and Frank Rossi, individually, Plaintiffs,**

v.

**SOMERSET OB–GYN ASSOCIATES, Defendant.**

**Civ. No. 91–4347.**

United States District Court, D. New Jersey.

June 1, 1994.

Arthur L. Shanker, Weiner & Shanker, Atlantic City, NJ, for plaintiffs.

Karen M. Lerner, McDonough, Korn & Eichhorn, P.C., Springfield, NJ, for defendant.

---

4. The Court observes that, even if we were to conclude that corporate successor liability might be applicable on these facts, Metlife has not carried its burden of showing that United Dominion is not protected by the general rule that successor companies do not assume the liabilities of transferor companies. Specifically, Metlife has failed to allege any facts which would establish that United Dominion may be subject to

---

corporate successor liability under one of the four exceptions to the general rule.