**Justin PEARSON, by and Through Carolyn TRENT, as Mother and Next Friend, Appellant,**

v.

**NATIONAL FEEDING SYSTEMS, INC., Appellee.**

No. 2001–SC–0379–DG.

Supreme Court of Kentucky.

Nov. 21, 2002.

Mike Breen, David Thomas Sparks, Mike Breen, P.S.C., Bowling Green, Counsel for Appellant.

Charles E. English, Jr., Brett A. Reynolds, English, Lucas, Priest & Owsley, Bowling Green, Counsel for Appellee.

Opinion of the Court by Justice
WINTERSHEIMER.

This appeal is from an opinion of the Court of Appeals which affirmed a summary judgment entered by the circuit court in favor of National Feeding Systems, Inc., in a products liability lawsuit brought by Pearson on a theory of successor-in-interest liability.

The questions presented are whether the exceptions to the successor-in-interest rule impose liability on National Feeding Systems, Inc.; whether the corporation contracted to assume liability for the debts and liabilities of a predecessor corporation; whether the transaction between National and a predecessor corporation falls into the merger/consolidation exception or the continuation exception, and whether this Court should adopt the product-line exception to the general rule of nonliability.

On November 16, 1996, 13–year–old Justin Pearson was feeding dairy cattle on his stepfather's farm when the silo unloader became clogged. He climbed into the silo and attempted to clear an augur but his leg became entangled in the saw teeth when the auger suddenly started again. As a result of the accident, Justin lost the bottom portion of his right leg.

Carolyn Trent, his mother, initiated this lawsuit against National Feeding Systems, Inc. Although National did not design, manufacture or sell the product that injured Justin, it now manufactures and advertises silo unloaders under its predecessor's brand name, Silo–Matic, and continues to use the same logo. The suit was based on two theories of liability. One was under the successor-in-interest principle; and the other was, in the alternative, a product-line exception under the same principle.

The circuit judge granted summary judgment in favor of National Feeding relying on *American Railway Express Co. v. Commonwealth*, 190 Ky. 636, 228 S.W. 433 (1920) and *Conn v. Fales Division of Mathewson Corp.*, 835 F.2d 145 (6th Cir.1987). He rejected the product-line theory for two reasons. First, the Sixth Circuit refused to recognize the theory in *Conn, supra*. Second, this was a new theory of potential liability and as such it needed to be adopted by a Kentucky appellate court. The Court of Appeals affirmed and this Court accepted discretionary review.

We find it necessary to review the history related to the manufacture of the unloaders in question. In 1956, Van Dusen and Company, Inc., registered a trademark for the name "Silo–Matic" with the United States Patent Office and manufactured and sold unloaders under the Silo–Matic trade name until the early 1980s. It manufactured the unloader involved in this accident. In the early 1980s, Van Dusen was purchased by Joan Olson and Joyce Van Dusen who subsequently sold the business or business assets to Dynamatic Feeding Systems, Inc. In 1989 or 1990, Dynamatic filed bankruptcy and was discharged from liability to its creditors or potential future creditors. On January 8, 1990, National Feeding purchased some of Dynamatic's assets through a bankruptcy sale for $850,000, and in return, received its accounts receivables, inventories, prepaid expenses and fixed assets, including its trademark. We realize that Pearson strongly contests the fact of bankruptcy, but it is supported by an uncontroverted affidavit.

## I. Standard of Review

The standard of review on appeal of a summary judgment is whether the circuit judge correctly found that there were no issues as to any material fact and that the moving party was entitled to a judgment as a matter of law. Summary judgment is appropriate where the movant shows that the adverse party could not prevail under any circumstances.

The function of summary judgment is to terminate litigation when it appears that it would be impossible for the respondent to produce evidence at trial warranting judgment in his or her favor. It is proper where the movant shows that the adverse party cannot prevail under any circumstances. *James Graham Brown Foundation, Inc. v. St. Paul Fire and Marine Ins. Co.*, Ky., 814 S.W.2d 273 (1991). As noted in *Steelvest Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991) and *Paintsville Hospital Co. v. Rose*, Ky., 683 S.W.2d 255 (1985), a party opposing a properly documented summary judgment cannot defeat it without presenting at least some affirmative evidence indicating that there is a genuine issue of a material fact. In addition, the construction of a contract is a matter of law for the court to decide. *See Morganfield National Bank v. Damien Elder & Sons*, Ky., 836 S.W.2d 893 (1992).

## II. Exceptions to Successor-in-interest Rule

It is generally accepted in Kentucky that a corporation which purchases another corporation does not assume the payment of any debts or liabilities of the corporation which it has purchased. *American Railway, supra; Conn.* It is also well settled in Kentucky that when the sale of a corporation is a bona fide transaction, and the selling corporation, Dynamatic, here, receives money to pay its debts or property that may be subjected to the payment of its debts and liabilities, the purchasing corporation will not, in the absence of a contract obligation or fraud, be held responsible for the debts or liabilities of the selling corporation. *American Railway*, 228 S.W. at 437. The only exceptions to the general rule that a purchaser, in the absence of a contract obligation, cannot be held responsible for the debts and liabilities of the selling corporation, are:

(1) where the purchaser expressly or impliedly agrees to assume such debts or other liabilities;

(2) where the transaction amounts to a consolidation or merger of the seller and purchaser;

(3) where the purchasing corporation is merely a continuation of the selling corporation; or

(4) where the transaction is entered into fraudulently in order to escape liability for such debts.

*Id.* at 437; *Conn*, 835 F.2d at 146.

*American Railway* is Kentucky's seminal case on the application of successor liability. The Court held that American Railway was liable for the liabilities of the Adams Company on a successor liability theory. Unlike National Feeding, American Railway was organized for the express purpose of taking over all of the property and rights of the Adams Company. The only consideration paid by American Railway for the purchase of the Adams Company was the capital stock of American Railway. The sale and transfer simply had the effect of putting American Railway in possession of Adams' property for the sole purpose of continuing to carry on the business of the Adams Company. *Id.* at 436.

The Court stated that its decision to hold American Railway liable for the debts

and obligations of the Adams Company was based upon "the broad equitable principle that where one corporation takes over the assets of another corporation, without paying to it any consideration therefor, as is the fact in this case, the absorbing corporation takes the assets of the absorbed corporation . . . ." *Id.* at 438. The Court noted that the circumstance in *American Railway,* that "was ultimately seized hold of to make the purchasing corporation liable" was that the selling corporation was paid for in the stock of the purchasing corporation, and the property of the selling corporation, to which the creditors might look with certainty for the payment of their debts, was turned over to the purchasing corporation. *Id.* at 440.

■ We cannot accept the argument by Pearson that National has liability under the first exception because it agreed to assume liability under the purchase and sale agreement between it and Dynamatic. In the 1990 agreement, National consented only to assume "specifically designated and listed liabilities". The agreement contained a separate addendum entitled "general assumptions of liability" which stated:

> National Feeding Systems, Inc., . . . does hereby assume and agree to pay and perform the obligations and liabilities of DynaMatic Feeding Systems, Inc. existing at the date of closing, and in particular those liabilities of DynaMatic Feeding Systems reflected on or reserved against in its unaudited financial statement of August 31, 1989, and January 31, 1990, and incurred in the usual course of business thereafter, as adjusted to the date of closing, except:
>
> . . . .
>
> C. Except claims, actions, or suits arising out of events occurring prior to closing.

Pearson contends that National agreed to assume liability for claims, actions or suits except those arising out of events occurring prior to the closing of the sale of Dynamatic to National. Pearson claims that because Justin was injured after the closing date, National had agreed to assume liability for the claim.

We must disagree, as did the Court of Appeals, for two reasons. First, we do not read the assumption of liability clause in the same fashion as Pearson. Although the language of the document excludes liability for claims, actions or suits arising out of events occurring prior to the closing, there is no express or implied assumption of liability for events occurring after the closing. It is clear that National agreed to assume only obligations and liabilities which existed at the date of the closing and other liabilities reflected or reserved against its unaudited financial statement as of certain dates and incurred in the usual course of business thereafter.

■ Second, even if National assumed the liabilities of Dynamatic for claims, actions or suits arising out of events after the closing, there is simply no indication of products liability because there is no evidence that Dynamatic had assumed such liabilities of Olson and Van Dusen when it purchased the Van Dusen company or that Olson or Van Dusen had assumed such liabilities when they purchased the company. Consequently, regardless of the interpretation of the assumption of liability clause, National had no liability in connection with the silage unloader manufactured by the Van Dusen Company in the absence of at least some indication or evidence that each purchaser in the chain of purchase had assumed liabilities of this nature.

■ Next, Pearson asserts that the circuit judge erred in failing to determine that the second exception to the general rule of nonliability is applicable. As noted earlier, that exception states that where

the transaction amounts to a consolidation or merger of the seller and the purchaser, the purchaser may be held liable for debts and liabilities of the seller even in the absence of a contract obligation. See *Conn*, 835 F.2d at 146. Pearson argues that National used the Silo–Matic trademark and has Dynamatic's trademark documents, corporate records, sales records, attorney-client correspondences and other information of the predecessor company in its possession, all of which allegedly indicate that a consolidation or merger occurred.

The circuit judge held that a reading of the purchase and sale agreement when considered in conjunction with the fact that the same was essentially a bankruptcy sale demonstrates that the sale of the business did not constitute a merger or consolidation. We must agree with the circuit judge and the Court of Appeals in that respect. The purchase and sale agreement between Dynamatic and National shows a strict cash purchase for the sum of $850,000 and there is no indication that there is any continuity of shareholders, management or other indicia of merger or consolidation. See *Dayton v. Peck, Stow & Wilcox Co.*, 739 F.2d 690 (1st Cir.1984).

█ Pearson also contends that the circuit court erred in determining that the third exception to the general rule did not apply. That exception holds that where the purchasing corporation is merely a continuation of the selling corporation, the purchaser may be responsible for liabilities of the selling corporation. *Conn.* Once again, the circuit judge held that a reading of the purchase and sale agreement, together with the fact that the sale was essentially a bankruptcy sale, indicated that the transaction was not a continuation of Dynamatic. As noted above, there was no continuity of shareholders or management so as to produce any kind of continuation. *Dayton, supra.*

The fourth element requires the transaction to be entered into fraudulently. Pearson concedes that no fraud exists in this case. See *Restatement (Third) of Torts: Products Liability* § 12 (1998) for a general review of successor-in-interest liability.

Pearson argues that even if none of the exceptions to the general rule are present, this Court should adopt the "product-line exception" and find National liable. This exception was adopted by the California Supreme Court in *Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977). See also *Ramirez v. Amsted Industries, Inc.*, 86 N.J. 332, 431 A.2d 811 (1981); *Garcia v. Coe Mfg. Co.*, 123 N.M. 34, 933 P.2d 243 (1997); *Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106 (1981); *Martin v. Abbott Lab. Inc.*, 689 P.2d 368 (Wash.1984).

However, in *Conn*, the Sixth Circuit U.S. Court of Appeals stated that they found it particularly unlikely that the Kentucky Supreme Court would adopt as novel a development as "product-line" liability. The adoption of this exception has been rejected by a variety of state and federal jurisdictions. Among them are the following: *Bernard v. Kee Manufacturing Co.*, 409 So.2d 1047 (Fla.1982); *Gonzalez v. Rock Wool Engineering & Equip. Co. Inc.*, 117 Ill.App.3d 435, 72 Ill.Dec. 917, 453 N.E.2d 792 (1983); *Pelc v. Bendix Machine Tool Corp.*, 111 Mich.App. 343, 314 N.W.2d 614 (1981); *Young v. Fulton Iron Works Co.*, 709 S.W.2d 927 (Mo.Ct.App. 1986); *Jones v. Johnson Machine & Press Co.*, 211 Neb. 724, 320 N.W.2d 481 (1982); *The Downtowner, Inc. v. Acrometal Products, Inc.*, 347 N.W.2d 118 (N.D.1984); *Flaugher v. Cone Automatic Machine Co.*, 30 Ohio St.3d 60, 30 OBR 165, 507 N.E.2d 331 (1987); *Hamaker v. Kenwel–Jackson Machine, Inc.*, 387 N.W.2d 515 (S.D.1986);

**52**

*Griggs v. Capitol Machine Works,* 690 S.W.2d 287 (Tex.App.1985); *Ostrowski v. Hydra–Tool Corp.,* 144 Vt. 305, 479 A.2d 126 (1984); *Fish v. Amsted Industries Inc.,* 126 Wis.2d 293, 376 N.W.2d 820 (1985).

 We decline to adopt the product-line exception for the sound reasons stated by the Nebraska Supreme Court in *Johnson Machine, supra.*

> Ordinarily, strict liability for defective products has not been imposed upon a defendant corporation without some responsibility for having created or perpetuated the defect. The question of whether or not strict liability in tort policy should be substantially altered by also changing established principles of corporate succession transactions involves broad public policy issues which are more appropriately left to legislative determination.

*Id.* at 484. As the court further explained:

> ... the corporate assets purchaser, as a successor of the manufacturer of a defective product, cannot be said to have created the risk of a product manufactured by its predecessor, and, except in a very remote way, does not realize the profit for the sale of a predecessor's product. Generally speaking, the successor corporation has neither invited use of its predecessor's product nor represented to the public that that product is safe and suitable for use.

*Id.*

As stated in *Guerrero v. Allison Engine Co.,* 725 N.E.2d 479 (Ind.Ct.App.2000), the rationale behind the product-line exception remaining the minority position in the courts in the United States is as follows:

> Strict liability should not be imposed because: the successor corporation did not create the risk nor did it directly profit from the predecessor's sale of the

defective product; it did not solicit the use of the defective product nor make any representations as to its safety; and it is not able to enhance the safety of a product that is already on the market.

*Id.* at 483 *citing Johnston v. Amsted Industries, Inc.,* 830 P.2d 1141, 1144 (Colo. Ct.App.1992). The product-line exception is "inconsistent with the principles of strict liability and result[s] in the imposition of liability without a corresponding duty." *Guerrero, supra,* at 483.

Finally, Pearson claims that it was error for the Court of Appeals to defer to the legislature on this question. Any reliance by Pearson on *Giuliani v. Guiler,* Ky., 951 S.W.2d 318 (1997), is misplaced. The legal and factual circumstances before the Court in *Giuliani, supra,* are very different from those here. In that case, we recognized a cause of action for a loss of parental consortium by a child. The legislature on its own had previously recognized the loss of consortium for a parent on the death of a child in KRS 411.135. Clearly, there was a progressive development in the law of consortium which is not found in the law of products liability. Moreover, *Giuliani* does not place an affirmative duty on the courts to act in the absence of the failure of the legislature to do so, but instead, stands for the proposition that it is not the sole province of the legislature to develop the common law. "In the absence of a legislative decree, courts may adopt and apply public policy principles." *Giuliani* at 321.

It is the decision of this Court that the circuit judge properly determined that there were no genuine issues of material fact and that National was entitled to a judgment as a matter of law pursuant to CR 56.03. National Feeding, the purchasing corporation, had no liability because none of the four exceptions to the general rule for the application of successor liabili-

ty, as stated in *American Railway,* were applicable. Pearson has failed to present any evidence or legal authority to establish that any of the exceptions apply. There is no evidence that National Feeding assumed liability for the product in the event it was proved defective. National Feeding did not merge nor continue the predecessor's business and it did not create the risk that Pearson was allegedly exposed to. It was not in a position to influence the manufacturing company at the time of the manufacture of the product, to enhance the safety of the machine. *American Railway* remains the law of Kentucky without question. We respectfully decline to extend Kentucky law to adopt the product-line exception.

The decisions of the Court of Appeals and the circuit court are affirmed.

All concur.