Leon B. PARKER, Appellant,

v.

HENRY A. PETTER SUPPLY CO.; Hannan Supply Company; and Mine Equipment & Mill Supply Co., Appellees.

No. 2004–CA–000259–MR.

Court of Appeals of Kentucky.

April 1, 2005.

As Modified on Grant of Modification June 3, 2005.

Joseph D. Satterley, Paul J. Kelley, Kenneth Sales, Sales, Tillman, Wallbaum, Catlett & Satterley, Louisville, KY, for appellant.

Stephen E. Smith, Jr., McMurry & Livingston, PLLC, Paducah, KY, for appellee Henry A. Petter Supply Company.

Richard C. Roberts, Whitlow, Roberts, Houston & Straub, PLLC, Paducah, KY, for appellee Hannan Supply Company.

Ridley M. Sandidge, Jr., Reed, Weitkamp, Schell, & Vice, PLLC, Louisville, KY, for appellee Mine Equipment & Mill Supply Company.

Before JOHNSON and McANULTY, Judges; HUDDLESTON, Senior Judge.[1]

## OPINION

McANULTY, Judge.

Leon B. Parker brought an action based on products liability in the Marshall Circuit Court against a number of companies he alleged supplied asbestos products to his employer, SKW Metals & Alloys (formerly known as Pittsburgh Metallurgical) (SKW). Parker alleged they were strictly liable for his injuries after he developed lung cancer, which he alleges was a result of exposure to asbestos. This appeal con-

---

1. Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

cerns three of those defendants. The Marshall Circuit Court granted motions for summary judgment in favor of defendants Henry A. Petter Supply Company (Petter Supply) and Hannan Supply Company (Hannan Supply). The court granted the motion of Mine Equipment & Mill Supply Company to dismiss it as a party as an improperly joined defendant. Parker appeals those orders. We have reviewed the record below and we vacate as to Petter Supply and Hannan Supply, and affirm as to Mine Equipment & Mill Supply.

Hannan Supply filed a motion for summary judgment which Petter Supply joined in and reiterated the arguments of, and so we consider their position together. The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. CR 56.03. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991). Summary judgment is only proper where the movant shows that the adverse party could not prevail under any circumstances. *Id., citing Paintsville Hospital Co. v. Rose,* 683 S.W.2d 255 (Ky. 1985). Thus, summary judgment should be granted only where it appears impossible for the nonmoving party to produce evidence at trial warranting judgment in his favor. *Id.* at 482.

Hannan Supply and Petter Supply asserted in their motion that they were wholesale distributors, not manufacturers, of asbestos products. They consequently argued for application of the "middleman statute" of the Kentucky Products Liability Act, KRS 411.340. In addition, Hannan Supply asserted that the time period in

which Parker handled asbestos materials was before Hannan Supply was founded. Petter Supply additionally asserted that Parker could not establish that he was exposed to asbestos from a product sold by Petter Supply, nor establish that any products sold by Petter Supply were a substantial contributing factor in causing Parker's injuries. The court below granted the motion for summary judgment without furnishing the basis therefore.

On appeal, Parker argues that the prerequisites of the middleman statute were not met, and Petter Supply and Hannan Supply are subject to strict liability under the Kentucky Products Liability Act for selling a defective product. We recognize that if the middleman statute applies, the motions for summary judgment were properly granted. KRS 411.340, the middleman statute, states:

> In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distributor or retailer, shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless such wholesaler, distributor or retailer, breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer.

Parker argues that the statute is inapplicable in two respects—first, not all of the manufacturers of the products were identified or subject to jurisdiction of the court; and second, he provided evidence that Petter Supply and Hannan Supply knew or

should have known that the product was defective and unreasonably dangerous at the time of Parker's exposure.

Parker worked at SKW beginning in 1955 and his exposure to asbestos products occurred in the early years of his employment there. Parker acknowledged in his deposition that he could not recall all of the manufacturers of asbestos products to which he may have been exposed. However, he asserted that his employer purchased asbestos cloth and asbestos furnace door hose from Hannan Supply, and identified Goodrich and possibly Goodyear as manufacturers of the hose and Johns–Manville as a manufacturer of the cloth. Hannan denied supplying these items.

He claimed Petter Supply supplied asbestos-containing cloth, tape, furnace door hose, blankets and gloves to his employer. Parker named Goodyear and Goodrich as manufacturers of furnace door hose, and Garlock as manufacturer of gaskets or packing material. Petter Supply admitted in interrogatories having sold gaskets and packing material made from asbestos but asserted it had no information after reasonable inquiry about other products sold to Parker's employer. Petter Supply named Garlock and Raybestos–Manhattan as manufacturers of the gaskets it sold, and Southern Asbestos as a possible manufacturer of asbestos cloth.

Parker claims the manufacturers of the defective products were not identified as required by KRS 411.340 because there may have been other manufacturers of the products as yet unnamed. Parker asserts that the wholesale suppliers were responsible for identifying the manufacturers in order to avail themselves of the middleman statute.

■ However, we agree with the appellees in this case that since manufacturers of the defective products have been identified, the middleman statute was applicable. It is of no consequence that there are other possible suppliers who were not identified by the parties. It would defeat the middleman statute's purpose—to protect those who merely sell the products—to hold that it cannot be used in the event of a simple claim that there exist other manufacturers. Moreover, we cannot agree with appellant's claim that the burden of identification has shifted to the defendants. While Petter Supply admitted it supplied products, it does not have knowledge of Parker's exposure to any products. This information is within Parker's knowledge based on his work experience. There is no showing that Petter Supply or Hannan Supply tried to conceal any product records. Thus, Petter Supply's and Hannan Supply's recollection of what they sold at the time of the exposure suffices to bring them within the middleman statute.

■ Parker further alleges that the manufacturers who may have been identified but are bankrupt are not subject to the jurisdiction of the court under the requirements of the middleman statute. Johns–Manville is one such manufacturer which has filed for bankruptcy. That status does not affect the jurisdiction of the court. While the filing of a bankruptcy petition operates as a stay of claims against the bankrupt debtor, the courts retain jurisdiction. We believe Parker's interpretation of the statute would supply terms that are not present in the statute. The legislature did not choose to require solvency of a manufacturer before sellers are relieved of liability. Moreover, Petter Supply points out that the Johns–Manville bankruptcy case actually established a mechanism for first-party and third-party claims to be asserted—which was used in this case to allow Petter Supply to join the Johns–Manville Personal Injury Trust Fund.

■ Parker next argues that the trial court erroneously determined under the

middleman statute that there was no evidence Petter Supply and Hannan Supply knew or should have known the product was defective. Parker claims the dangers of asbestos were known in the scientific and medical community at the time he was exposed to asbestos, and this created a question of fact which precluded summary judgment. Whether this is a fact issue to be resolved by a jury depends on whether the plaintiff alleged the existence of any fact from which such knowledge could be inferred. *Funk v. Wagner Machinery, Inc.*, 710 S.W.2d 860, 862 (Ky.App.1986). A litigant need not be required to try his case on a motion for summary judgment, but he has the burden of showing that a fact issue exists. *Id.*

Parker showed that the medical and scientific community was aware of defects as early as the time that Parker was exposed to asbestos products. Parker's expert, Dr. Pohl, testified in his deposition that if asked about it at trial he would testify about when the medical and scientific community knew or should have known of the dangers of asbestos. He stated that he had testified in other cases that the medical community has known about asbestosis as of 1930, about lung cancer and asbestos exposure as of 1943, and the link between asbestos and mesothelioma sometime between 1953 and 1960. He stated that he would testify, if asked, about when manufacturers and distributors knew or should have known of the dangers of asbestos in terms of "state of the art," or scientific knowledge at different points in time, which would be a reflection of what they would, could or should have known.

As to when manufacturers and distributors acquired knowledge, Dr. Pohl testified that scientific knowledge was available to anyone through medical libraries or publications as well as through lay publications in the 1940s and 1950s, and he could testify to that. He stated that he was aware of some manufacturers and distributors and their knowledge about asbestos, although he did not have specific awareness of Petter Supply's knowledge. He stated that instead he would testify as to what was known in the medical literature as well as what was being published in the lay literature that was available to anybody, even suppliers.

The standard is whether Petter Supply or Hannan Supply knew or should have known. We conclude that the grant of summary judgment was premature. Parker's evidence presented at least an issue of fact that Parker should have been allowed to develop in continued discovery. As stated above, all doubts are to be resolved in favor of the party opposing the motion for summary judgment. *Steelvest*, 807 S.W.2d at 480. Thus, we vacate the trial court's grant of summary judgment.

■ As to Mine Equipment & Mill Supply, Parker argues that it should not have been dismissed as a defendant because it is the legal successor to Mine and Mill Supply which supplied asbestos products to Parker's employer. The trial court found in its order dismissing that Mine Equipment & Mill Supply was incorporated four years after Parker retired from his job at SKW. It found that Mine Equipment & Mill Supply had no liability in that it had only purchased assets from IRECO, which had purchased same or similar from Mine and Mill Supply, and the ownership, management and business differed substantially from that of IRECO. Thus, the court concluded Mine Equipment & Mill Supply did not succeed to Mine and Mill Supply's liability and that Parker could have pursued IRECO as a defendant.

■ The general rule regarding liability of a corporate successor in Kentucky is that a purchasing corporation does not assume liability for the debts and liabilities of the selling corporation. *Pearson ex rel. Trent v. National Feeding Systems, Inc.*,

90 S.W.3d 46 (Ky.2002); *American Railway Express Co. v. Commonwealth,* 190 Ky. 636, 228 S.W. 433 (1920). When the sale of a corporation is a bona fide transaction, and the selling corporation receives money to pay its debts or property that may be subjected to the payment of its debts and liabilities, the purchasing corporation will not, in the absence of a contract obligation or fraud, be held responsible for the debts or liabilities of the selling corporation. *Pearson* at 49.

▆▆▆ There are four exceptions to the general rule:

(1) where the purchaser expressly or impliedly agrees to assume such debts or other liabilities;

(2) where the transaction amounts to a consolidation or merger of the seller and purchaser;

(3) where the purchasing corporation is merely a continuation of the selling corporation; or

(4) where the transaction is entered into fraudulently in order to escape liability for such debts.

*Id.* at 49, *citing American Railway,* 228 S.W. at 437–41.

While IRECO assumed the debts of its predecessor, Mine Equipment & Mill Supply did not agree to accept debts and liabilities other than those contained on a schedule titled Trial Balance. Parker alleges, nevertheless, that Mine Equipment & Mill Supply is merely a continuation of its predecessor corporations and is subject to successor liability. He argues that this continuation is shown by the assets purchased by the corporation and the intention to continue the same business as the selling corporation.

▆▆▆ In Kentucky, a determination of the continuity of a corporation after a sale depends on examining the sale agreement to determine continuity of shareholders or management. *Pearson,* 90 S.W.3d

at 51. Even where an adequate consideration was paid for the assets, a successor company which continues with the same business, by the same officers and personnel, in the same location with only a slight change in name will be considered liable for the debts and liabilities of the selling company. *Payne–Baber Coal Company of Kentucky v. Butler,* 276 Ky. 211, 123 S.W.2d 273, 275 (1938). The trial court compared the shareholders and management of the purchasing company, Mine Equipment & Mill Supply, with its predecessors, which was the correct analysis under Kentucky law.

The facts of the transactions at issue show: In 1987, a company named Mine and Mill Supply Company, Inc., sold the bulk of its assets to IRECO, Inc. IRECO purchased the assets, including certain real estate, and in addition purchased "all debts, liabilities, obligations, contracts, and commitments" from Mine and Mill Supply. Approximately a month later, in May 1988, IRECO sold approximately the same assets to Mine Equipment & Mill Supply Company. Mine Equipment & Mill Supply was incorporated in Delaware on May 20, 1998. Mine Equipment & Mill Supply was a wholly owned subsidiary of Midland Powder which was owned 50% by David L. Childs and 50% by Dyno Nobel.

Mr. Childs became president of Mine Equipment & Mill Supply at the time it acquired from IRECO most of the assets previously owned by Mine and Mill Supply. He had not been a shareholder or officer or director of Mine and Mill Supply or of IRECO. He testified by deposition that Mine Equipment & Mill Supply proceeded with completely different management than Mine and Mill Supply had. The owner of Mine and Mill Supply retired. Furthermore, IRECO and Mine Equipment & Mill Supply continue as separate businesses today. Mr. Childs also testified to the ways in which the business conduct-

ed by Mine Equipment & Mill Supply differed from its predecessor, Mine and Mill Supply.

Therefore, we cannot agree with Parker that under the factors which determine continuation, Mine Equipment & Mill Supply merely continues the businesses that went before it. We agree that appellant has not presented any facts which convince us that Mine Equipment & Mill Supply is a continuation of either Mine and Mill Supply or IRECO. Thus, we affirm the trial court's conclusion that Mine Equipment & Mill Supply could be dismissed because it was incorporated after Parker's employment and had no liability for its selling corporation's debts.

For the foregoing reasons, we affirm the orders of the Marshall Circuit Court as it relates to Mine Equipment & Mill Supply and vacate the summary judgment granted in favor of Petter Supply and Hannan Supply and remand for further proceedings.

ALL CONCUR.