**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0479n.06

No. 08-6172

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jul 10, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| EXCEL ENERGY, INC., | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| CANNELTON SALES CO., | ) | **O P I N I O N** |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CYPRUS AMAX COAL SALES CORP. and | ) | |
| CYPRUS AMAX COAL CO., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:     GILMAN and McKEAGUE, Circuit Judges; and BARRETT, District Judge.[*]

**McKEAGUE, Circuit Judge.** Excel Energy had an exclusive contract with Cannelton Sales to sell coal to a particular industrial plant. After the ultimate parent of Cannelton Sales was merged with another mineral-based company, one of Cannelton Sales' new sister companies sold coal to that same industrial plant. Excel Energy sued Cannelton Sales, the sister company, and one of the parent companies for breach of contract and several other claims. The district court concluded that the

_____

[*]The Honorable Michael R. Barrett, United States District Judge for the Southern District of Ohio, sitting by designation.

sister company and parent company were not successors in interest to Cannelton Sales and dismissed the claims against those companies. For the reasons set forth below, we affirm.

# I

A detailed history of this lawsuit can be found in this court's decision remanding an earlier appeal for further proceedings. *Excel Energy, Inc. v. Cannelton Sales Co.*, 246 F. App'x 953, 955-58 (6th Cir. 2007). Following is a brief summary.

## A. Merger of Amax and Cyprus Minerals

Prior to November 1993, Amax[1] was the parent company of Amax Coal Industries, which was the parent company of Cannelton Industries. Cannelton Industries owned a number of subsidiary corporations, including various coal-mining companies and Cannelton Sales, a corporation set up to sell the coal of Cannelton Industries.

Also prior to November 1993, Cyprus Minerals was the parent company of Cyprus Coal. Cyprus Coal owned a number of subsidiary corporations, including various coal-mining companies and Cyprus Coal Sales, a corporation set up to sell the coal of Cyprus Coal.

In March 1993, Amax and Cyprus Minerals entered into a merger agreement. As to the resulting corporation, the agreement provided, "[T]he parties intend to effect a merger of Amax with and into Cyprus (the 'Merger'), with Cyprus being the corporation surviving such Merger." Record

---

[1]All of the business entities are corporations. "Co." and "Inc." have been omitted for ease of reference.

on Appeal ("ROA") 1341. "Cyprus" was identified earlier in the agreement as Cyprus Minerals. Amax and Cyprus Minerals consummated the stock merger in November 1993. Amax was merged into Cyprus Minerals, and the resulting entity was named Cyprus Amax Minerals.

The merger created Cyprus Amax Coal, a combination of Amax Coal Industries and Cyprus Coal. Cyprus Amax Coal became the parent company of Cannelton, the parent company of Cannelton Industries. Cannelton Industries remained the parent company of Cannelton Sales.

Cyprus Amax Coal also became the parent company of Cyprus Coal Sales, renamed Cyprus Amax Coal Sales. At the end of 1993, one employee of Cannelton Sales, the director of contract administration, became employed in a similar capacity with Cyprus Amax Coal Sales. There is no other evidence of migration of employees from Cannelton Sales to Cyprus Amax Coal Sales.

The merger agreement was silent as to whether Cyprus Minerals would assume the general debts and liabilities of Amax subsidiaries. The agreement provided, rather, that Cyprus Minerals would assume specific liabilities, including liabilities involving employee-benefit plans and indemnifications of directors and officers.

## B.     Excel Energy/Cannelton Sales Contract

Excel Energy entered into a contract with Cannelton Sales in March 1993. The contract is referred to herein as the "Excel Energy/Cannelton Sales Contract." The contract gave Excel Energy exclusive rights to present "Cannelton's Kanawha Division coal" to the Missouri Portland Cement Plant in Joppa, Illinois ("LaFarge Plant") from March 24, 1993, through December 31, 1994.

During negotiations, the companies exchanged drafts of the contract. As evidenced by their

final agreement, the parties chose to make the obligations of the contract the responsibility of Cannelton Sales alone, not of Cannelton and its affiliates or subsidiaries, as proposed in some of the working drafts of the agreement.

**C.      Cyprus Amax Coal Sales Took Over LaFarge Plant Business**

LaFarge Plant requested bids for coal for the first quarter of 1994. The request went to several sellers, including Excel Energy and Cyprus Amax Coal Sales, both of which submitted bids. In its bid to LaFarge Plant, Cyprus Amax Coal Sales stated that its bid was "on behalf of its affiliate Cyprus Kanawha Corporation" and that the coal could be supplied "from any of its affiliates controlled by Cyprus Amax Coal Company." ROA 319. During this same time, Cyprus Amax Coal Sales submitted a bid "on behalf of its affiliate, Cannelton Sales Company . . . to supply coal from its Kanawha Division to Excel Energy, Inc. for resale" to LaFarge Plant. ROA 1323. In short, Cyprus Amax Coal Sales offered to supply coal to LaFarge Plant directly and also offered to supply coal on behalf of Cannelton Sales to Excel Energy for resale to LaFarge Plant.

LaFarge Plant accepted the bid of Cyprus Amax Coal Sales on behalf of Cyprus Kanawha, but also continued to solicit bids for coal through 1994. Cyprus Amax Coal Sales submitted a bid in March 1994 on "behalf of its coal producing affiliates." ROA 322. Excel Energy did not submit a bid this time. LaFarge Plant accepted the bid of Cyprus Amax Coal Sales.

**D.      Responsibility for Selling Cyprus Amax Coal**

Cyprus Amax Coal Sales eventually took over responsibility for selling coal from all Cyprus Amax Coal mines, including Cannelton Industries mines.  Greg A. Walker, an attorney who worked for the Cyprus parent company prior to and after the merger, testified that Cyprus Amax Coal Sales "would have assumed the responsibilities for the sales and marketing for all of the operations of the newly-merged entities." ROA 841.  Harry Thomas, a salesman for Cyprus Amax Coal Sales, testified that he became responsible for sales in territories previously handled by Cannelton Sales.  According to Walker, Cannelton Sales still had business to conduct after the merger, namely managing and administering its sales agreements entered prior to the merger, while Cyprus Amax Coal Sales would take responsibility for coal sales on a going-forward basis.

In January 1994, Cyprus Amax Coal Sales and Cannelton Industries entered into a sales representation agreement.  The agreement provided in part:

> Producer [Cannelton Industries] appoints Representative [Cyprus Amax Coal Sales] to act as its agent to represent Producer in the sale and transportation of coal produced from the Coal Properties to domestic and export coal markets for power generating stations, cogeneration facilities, or steel making facilities. Representative shall also act as Producer's agent to handle the administration of all coal sales agreements for coal produced from the Coal Properties in effect during the term of this Agreement. Representative accepts the foregoing appointments as Producer's agent. Representative's agency appointment as provided herein shall be an *exclusive representation* of coal produced from the Coal Properties, *unless Producer shall first provide Representative with a copy of any agreement it may have with a third party to provide some or all of the Services*.

ROA 1326 (emphasis added).

**E.      Lawsuit**

At some point in 1994, Cyprus Amax Coal Sales used coal from one of the Cannelton Industries' mines to fulfill its contract with LaFarge Plant.  Excel Energy contended that this breached the Excel Energy/Cannelton Sales Contract because Excel Energy had the exclusive right to present that coal to LaFarge Plant.  Excel Energy sued Cannelton Sales, Cyprus Amax Coal Sales, and Cyprus Amax Coal in Kentucky state court in 1998.  The case was later removed to the federal District Court of Western Kentucky based on diversity jurisdiction.  Excel Energy asserted claims of breach of contract, breach of good faith and fair dealing, and intentional interference with contract under Kentucky state law.

The district court dismissed the claims against Cannelton Sales with prejudice as a result of the company's bankruptcy filing in 2002.  Excel Energy did not appeal the dismissal.

Cyprus Amax Coal Sales and Cyprus Amax Coal moved for summary judgment.  They maintained that the breach-of-contract claim failed as a matter of law because the contract was between Excel Energy and Cannelton Sales, not the Cyprus defendants.  They further contended that the intentional-interference claim failed because they had the right to compete with Excel Energy for sale of coal to LaFarge Plant.  Excel Energy filed a cross-motion for summary judgment.  The district court granted summary judgment to the Cyprus defendants on both claims; it did not specifically address Excel Energy's claim for breach of good faith and fair dealing.

This court affirmed in part and reversed in part.  It agreed that summary judgment for the Cyprus defendants was proper as to the intentional-interference claim. *Excel Energy*, 246 F. App'x at 967-68.  The court concluded, however, that there was a genuine issue of material fact on whether

the Cyprus defendants violated the Excel Energy/Cannelton Sales Contract. *Id.* at 963-66. The court remanded the breach-of-contract claim as well as the breach-of-good-faith-and-fair-dealing claim for further proceedings. The court noted, however, that the district court had not addressed an issue raised in the initial summary-judgment briefs; namely, whether the Cyprus defendants were liable on the Excel Energy/Cannelton Sales Contract as successors in interest. *Id.* at 959 n.5.

On remand, the district court considered the successor-in-interest issue. The district court noted that, under Kentucky law, separate corporate interests like subsidiaries and affiliates are treated as distinct legal entities. Moreover, a corporation that purchases another corporation normally does not assume the liabilities of that corporation. The district court recognized that there are exceptions to this general rule, including (1) when the purchaser and seller merge, or (2) when the purchasing corporation is a mere continuation of the selling corporation. The district court determined, however, that there was no record evidence showing that Cannelton Sales itself had merged with any company or that Cyprus Amax Coal Sales was a mere continuation of Cannelton Sales. Accordingly, the district court found that the Cyprus defendants were not successors in interest to Cannelton Sales and, therefore, could not be held liable for any breach of contract or breach of good faith and fair dealing by Cannelton Sales.

Excel Energy appealed.

## II

**A.      Summary Judgment**

We review de novo the district court's grant of summary judgment. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 619 (6th Cir. 2006). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To survive summary judgment, the non-movant must provide evidence beyond the pleadings "set[ting] out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

**B.      Kentucky Law on Successor In Interest**

Cyprus Amax Coal Sales did not expressly assume the duties and liabilities of Cannelton Sales arising under the Excel Energy/Cannelton Sales Contract. Although Cyprus Amax Coal Sales became the exclusive agent for Cannelton Industries, that agency relationship was subject to any prior agreement that Cannelton Industries had with a third party. Moreover, Cyprus Amax Coal Sales entered into that agency agreement with Cannelton Industries, *not* Cannelton Sales. Thus, the question on appeal is whether Cyprus Amax Coal Sales is the successor in interest to Cannelton Sales and thereby can be deemed to have assumed those duties and liabilities.

Under Kentucky law, "a corporation which purchases another corporation does not assume the payment of any debts or liabilities of the corporation which it has purchased." *Pearson ex rel. Trent v. Nat'l Feeding Sys.*, 90 S.W.3d 46, 49 (Ky. 2002) (citations omitted). Moreover, liability will not be imposed on a parent corporation merely because of its ownership of the subsidiary. 15 *Fletcher Cyclopedia, Corporations* § 7131 (2008) ("A holding company is ordinarily not liable for the debts of the corporation whose stock it holds.").

Kentucky recognizes four exceptions to the general rule that a purchasing corporation does not assume the debts or liabilities of a selling corporation. These are:

(1) where the purchaser expressly or impliedly agrees to assume such debts or other liabilities;

(2) where the transaction amounts to a consolidation or merger of the seller and purchaser;

(3) where the purchasing corporation is merely a continuation of the selling corporation; or

(4) where the transaction is entered into fraudulently in order to escape liability for such debts.

*Pearson*, 90 S.W.3d at 49 (citations omitted).

On appeal, Excel Energy relies upon three of the four exceptions to establish successor-in-interest liability on behalf of the Cyprus defendants: agreement to assume debts and liabilities; merger; and mere continuation. We consider each in turn.

## C. Express or Implied Assumption Exception

As noted above, when the purchasing corporation agrees to take on the debts and liabilities of the selling corporation, courts will give effect to that agreement, whether express or implied. This exception, however, provides little support for Excel Energy's successor-in-interest theory. As an initial matter, Cannelton Sales was not purchased—there was no stock or asset transaction involving Cannelton Sales itself. Rather, its ultimate parent, Amax, merged with another corporation. Although the identity of the ultimate owner of a subsidiary changes, the merger of a parent does not result in or otherwise legally equate to the purchase of the subsidiary. *Cf. Hazard Coal Corp. v. Ky.*

*W. Va. Gas Co.*, 311 F.3d 733, 739 (6th Cir. 2002) ("Under Kentucky law, separate corporate interests, including subsidiaries and affiliates . . . , are separate legal entities and must be recognized and treated as such . . . .").

A review of the merger agreement between Amax and Cyprus Minerals confirms that Cyprus Minerals did not agree to assume the debts and liabilities of Cannelton Sales, except with respect to some employee benefits and indemnifications of directors and officers. Nor has Excel Energy directed us to anything in the record to suggest that Cyprus Minerals implicitly agreed to take on the debts and liabilities of any of the Amax subsidiaries. The assumption by the purchasing corporation of a limited set of the seller's debts and liabilities does not imply the assumption of all of the seller's debts and liabilities. *Pearson*, 90 S.W.3d at 50.

**D.     Merger Exception**

Excel Energy also relies upon the merger of Amax and Cyprus Minerals to show that Cyprus Amax Coal Sales was the successor in interest to Cannelton Sales. Again, though, subsidiaries are separate and distinct legal entities from their parents and only if there is reason to pierce the corporate veil will a court treat a parent and a subsidiary as a single entity. *Hazard Coal*, 311 F.3d at 739. Excel Energy has not advanced any veil-piercing arguments; instead, it relies upon the merger of the ultimate parents to support its successor-in-interest theory.

Excel Energy has not pointed to anything in the record to show that Cannelton Sales itself actually merged into one of the Cyprus Minerals companies. As support for its theory, Excel Energy asserts in its brief, "[T]he [Merger] Agreement provides that the Cyprus *entities* would be the

'surviving corporation.'" Appellant's Br. at 15 (emphasis added). That is not what the agreement says. Rather, as previously noted, the merger agreement provides, "[T]he parties intend to effect a merger of Amax with and into Cyprus (the 'Merger'), with Cyprus being the corporation surviving such Merger." ROA 1341. "Cyprus" refers to the parent company, Cyprus Minerals. The record clearly shows that this was a merger of parents, not of subsidiaries.

Prior to the merger of parents, Cannelton Sales was a separate corporate interest to that of its ultimate parent, Amax. After the merger, Cannelton Sales remained a separate corporate interest to that of its newly merged ultimate parent, Cyprus Amax Minerals. While the ultimate parents of Cannelton Sales and Cyprus Amax Coal Sales merged, that merger did not result in the merger of the subsidiaries' corporate interests into one single corporate entity.

### E.  Mere-Continuation Exception

Finally, Excel Energy argues that Cyprus Amax Coal Sales is a mere continuation of Cannelton Sales. Excel Energy runs into an obstacle at the very outset of this exception: there is no purchaser-seller relationship between Cyprus Amax Coal Sales and Cannelton Sales, a circumstance plainly required under *Pearson*, 90 S.W.3d at 49. Notwithstanding this obstacle, Excel Energy's reliance on the mere-continuation exception still fails.

The factors to consider under this exception are varied. Chief Judge Heyburn of the Western District of Kentucky has provided a helpful list of factors culled from federal and state cases. *Dixstar v. Gentec Equip.*, No. 3:02-CV-45-H, 2004 WL 3362501, at * 4 (W.D. Ky. Feb. 11, 2004). These are:

> (1) continuity of shareholders and ownership, management, personnel, physical location, and business operations, (2) whether sufficient consideration was given, particularly whether stock was given in exchange, (3) whether the predecessor ceased business operations and was dissolved shortly after the new company was formed, (4) whether the successor company paid any outstanding debts on behalf of the previous company in order to continue business without interruption, (5) the buyer's intent or purpose when the new company was formed, and (6) whether the successor held itself out to the public as a continuation of the previous company.

*Id.* (collecting cases; footnotes and citations omitted). Excel Energy wants to add to this list what it calls the "determinative factor": "whether the predecessor corporation [Cannelton Sales] remains as a viable source for recovery." Appellant's Br. at 18. This is not, however, a factor that Kentucky courts have endorsed. *Cf. Pearson*, 90 S.W.3d at 51-52 (rejecting a strict-liability-based rationale for extending the mere-continuation exception).

Directly after the merger, Cannelton Sales and Cyprus Amax Coal Sales did not share the same shareholders—Cannelton Sales was owned by Cannelton Industries and Cyprus Amax Coal Sales was owned by Cyprus Amax Coal. There is no evidence of common directors or officers. This lack of commonality of shareholders, directors and officers weighs heavily against Excel Energy. *In re: Wright Enters.*, 77 F. App'x 356, 369 (6th Cir. 2003); *Parker v. Henry A. Petter Supply Co.*, 165 S.W.3d 474, 479 (Ky. Ct. App. 2005) ("In Kentucky, a determination of the continuity of a corporation after a sale depends on examining the sale agreement to determine continuity of shareholders or management."). The companies did share a common ultimate parent, but that cannot be controlling, as the exception would otherwise swallow the rule. Excel Energy does not suggest that there was insufficient consideration given to Amax stockholders as part of the merger. There is no question that Cannelton Sales continued in its corporate form for years after the merger. Nor

is there any indication that Cyprus Amax Coal Sales paid any outstanding debts of Cannelton Sales or held itself out to the public as a continuation of Cannelton Sales.

Excel Energy argues that Cannelton Sales "employees" continued to perform the identical job duties for Cyprus Amax Coal Sales after the merger. This assertion is broader than the record evidence relied upon. There is evidence that a single Cannelton Sales employee became employed at Cyprus Amax Coal Sales shortly after the merger. This court rejected a similar argument that a company was the successor of another as evidenced by the transfer of one employee. *Conn v. Fales Div. of Mathewson Corp.*, 835 F.2d 145, 147 (6th Cir. 1987).

Excel Energy places considerable emphasis on the December 1993 offer to Excel Energy by Cyprus Amax Coal Sales "on behalf of its affiliate" Cannelton Sales. Yet, had there been continuation, Cyprus Amax Coal Sales would not have offered Excel Energy coal "on behalf of its affiliate," but rather would have done so directly on behalf of itself as a successor to Cannelton Sales.

Finally, there is evidence that Cyprus Amax Coal Sales began to sell coal on behalf of all Cyprus Amax Coal properties, including Cannelton Industries properties. Yet, viewed in the light most favorable to Excel Energy, the evidence shows that Cyprus Amax Coal Sales assumed responsibility for all future coal sales for the Cyprus Amax Coal constellation of companies. While the agency agreement between Cyprus Amax Coal Sales and Cannelton Industries put the former company in charge of the administration of all coal sales agreements for coal produced during the term of the agency agreement, this was expressly subject to any prior service agreements Cannelton Industries might have had, including with Cannelton Sales.

Excel Energy has failed to show that there is any genuine issue of material fact regarding whether the Cyprus defendants are successors in interest to Cannelton Sales. Because Kentucky law shields a purchaser from the debts and liabilities of a seller corporation absent some showing of successor-in-interest liability, the Cyprus defendants cannot be held liable on Excel Energy's breach-of-contract claim against Cannelton Sales. Likewise, Excel Energy's claim of breach of good faith and fair dealing requires a showing of a contractual relationship and, accordingly, Excel Energy's failure to show that the Cyprus defendants are successors in interest to Cannelton Sales likewise forecloses liability against these defendants.

### III

For the reasons set forth above, we **AFFIRM** summary judgment in favor of the Cyprus defendants.