RENDERED: FEBRUARY 16, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0288-DG

WALMART, INC.; WAL-MART ASSOCIATES, INC.; WAL-MART REALTY COMPANY; WAL-MART STORES, EAST, LIMITED PARTNERSHIP; WAL-MART STORES, INC.; WAL-MART TRS, LLC; WSE MANAGEMENT      APPELLANTS

V.      ON REVIEW FROM COURT OF APPEALS
NO. 2020-CA-0679
FAYETTE CIRCUIT COURT NO. 18-CI-00206

LEIGH ANN REEVES      APPELLEE

**OPINION OF THE COURT BY JUSTICE KELLER**

**<u>REVERSING AND REINSTATING</u>**

Wal-Mart appeals to this Court from the Court of Appeals decision reversing the trial court's judgment. Wal-Mart argues that the Court of Appeals improperly interpreted this Court's precedent on premises liability for third-party criminal acts. For the reasons stated below, we reverse the Court of Appeals and reinstate the trial court's judgment.

## I. BACKGROUND

After midnight on March 22, 2017, Leigh Ann Reeves walked out of the Wal-Mart on Nicholasville Road in Lexington, Kentucky. Reeves reached her vehicle safely, but when she sat down in her driver's seat, she was attacked by two unknown men attempting to rob her while a third unknown man waited in

their getaway car. She was struck twice before a bystander interceded, at which point her assailants fled. After this attack, Reeves filed suit against Wal-Mart for failing to protect her from the assault and robbery. Reeves alleged that Wal-Mart was negligent by not having a security presence outside the store to protect patrons from third-party criminal acts.

After some discovery, Wal-Mart moved for summary judgment on Reeves's claims. To the trial court, Reeves produced police reports from the Nicholasville Road Wal-Mart as well as Wal-Mart's own CAP Index, Inc. Crimecast Report to show that Wal-Mart had a duty to protect Reeves from third-party criminal acts.[1] However, none of the records produced by Reeves indicated similar crimes close in time to her attack. The trial court therefore granted Wal-Mart's motion for summary judgment. The trial court found that Reeves "has failed to prove that other alleged criminal acts at or near the Nicholasville Road Wal-Mart were of sufficient character and number to make this particular act reasonably foreseeable to Wal-Mart." Accordingly, as a matter of law, the trial court concluded that "Wal-Mart owed [Reeves] no duty" and dismissed Reeves's claims with prejudice.

---

[1] CAP Index, Inc. "provides innovative solutions for companies and government agencies looking to minimize losses," including those due to general liability and crimes against persons and property. CAP Index, Inc. is used by companies to predict the likelihood of crime in a given area using historic statistical data. Companies then use that prediction to determine what safety measures to implement.

Reeves appealed the trial court's order to the Court of Appeals, which reversed the decision of the trial court. Wal-Mart sought discretionary review from this Court, which we granted.

## II. ANALYSIS

On appeal to this Court, Wal-Mart argues that the Court of Appeals improperly extended our holding in *Shelton v. Kentucky Easter Seals Society, Inc.*, 413 S.W.3d 901 (Ky. 2013) and, in doing so, incorrectly reversed the trial court's grant of summary judgment. We agree.

"The standard of review on appeal of a summary judgment is whether the circuit judge correctly found that there were no issues as to any material fact and that the moving party was entitled to a judgment as a matter of law." *Pearson ex rel. Trent v. Nat'l Feeding Sys., Inc.*, 90 S.W.3d 46, 49 (Ky. 2002). In ruling on a motion for summary judgment, the Court is required to construe the record "in a light most favorable to the party opposing the motion . . . and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 480 (Ky. 1991) (citations omitted).

In general, negligence claims require proof that the defendant owed the plaintiff a duty, that the defendant breached that duty, and that the plaintiff suffered a harm that was proximately caused by the breach. *Illinois Cent. R.R. v. Vincent*, 412 S.W.2d 874, 876 (Ky. 1967) (citations omitted). For premises liability cases involving third-party criminal acts, the owner of a premises has a duty to protect patrons from third-party acts if he or she "knows of activities or conduct of other patrons or third persons which would lead a reasonably

3

prudent person to believe or anticipate that injury to a patron might be caused," (in other words, is foreseeable), and if he or she can reasonably safeguard against them. *Napper v. Kenwood Drive-In Theatre Co.*, 310 S.W.2d 270, 271 (Ky. 1958).

The trial court relied on this rule from *Napper* to determine that because the third-party criminal act at issue in this case was not foreseeable, Wal-Mart had no duty to protect Reeves from it. In reversing, the Court of Appeals applied this Court's holding in *Shelton v. Kentucky Easter Seals Society, Inc.*, 413 S.W.3d 901, which had never been extended by this Court beyond open-and-obvious conditions. In *Shelton*, this Court decided that for open-and-obvious premises liability cases, the foreseeability analysis formerly conducted under both the duty and breach elements of a negligence claim would instead apply only to the breach element. *Id.* at 914 (citation omitted) ("[T]he foreseeability of the risk of harm should be a question normally left to the jury under the breach analysis."). In so holding, this Court reasoned that owners of premises always have a legal duty due to "the landowner-invitee relationship and general duty of reasonable care applicable to landowners." *Id.* at 908. Therefore, instead of starting with whether harm caused by an obvious hazard was foreseeable enough to create a duty, the "analysis will almost always begin with the breach question, given the broad sweep of the general duty of reasonable care." *Id.*[2] The *Shelton* rule is consistent with the Restatement

---

[2] The Court in *Shelton* redefined the open-and-obvious negligence analysis as the following:

4

(Second) of Torts (1965), § 343A, "Known or Obvious Dangers," upon which this Court in part relied. In *Shelton*, therefore, the Court shifted any foreseeability (or fact-dependent) analysis in open-and-obvious cases *outside* of the duty analysis. *Id.*

In the case at bar, the Court of Appeals held that *Shelton*'s holding for open-and-obvious conditions was intended to be a sea change in negligence cases at large. The Court of Appeals noted that this Court had yet to extend *Shelton*'s holding beyond open-and-obvious cases. Nevertheless, the Court of Appeals determined that our Court intended for *Shelton* to apply to all negligence claims. By extending *Shelton*, the Court of Appeals reasoned that Wal-Mart, as a matter of law, always has a duty to safeguard all invitees from harm on its property, regardless of the foreseeability of the danger that may befall them. For that reason, the Court of Appeals held that the trial court erred by finding "no duty" and remanded for the trial court to conduct the foreseeability analysis within the element of breach.

---

Accordingly, the analysis we now apply proceeds this way:

1) Along with the defendant's general duty of care, the defendant's duty is outlined by the relationship between the parties. E.g., an invitor has a duty to maintain the premises in a reasonably safe condition in anticipation of the invitee's arrival.

2) Was the duty breached?

AND

3) Is the defendant's liability limited to some degree by the plaintiff's comparative negligence?

*Id.*

5

This Court has never explicitly or definitively extended *Shelton* outside of the open-and-obvious context. While in *Carter*, this Court wrote "Although *Shelton* involved an indoor, man-made hazard, its rule is generally applicable to all negligence cases," that statement was mere dicta. *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 297 (Ky. 2015). In *Carter*, this Court extended the holding in *Shelton* from only man-made open-and-obvious cases to naturally occurring open-and-obvious cases. *Id.* So, we continued to restrain *Shelton* to open-and-obvious cases.

*Shelton*'s cabining of foreseeability to a breach analysis is thus limited only to open-and-obvious cases. Even if it were to extend beyond open-and-obvious cases, however, it certainly could not extend so far as cases involving third-party criminal actions. Landowners cannot control the actions of third parties on their property, making these cases markedly different from those involving the man-made or naturally occurring aspects of a property capable of maintenance or curative measures.

Additionally, extending *Shelton* to third-party criminal activity would create an economically untenable reality for business owners and, ultimately, their customers. A small business in a transitioning or high crime neighborhood should not have to bear the costs of an ever-present duty to protect patrons. Inevitably, such costs will be borne out in consumer prices, exacerbating economic inequalities already present throughout the Commonwealth. *See Shelton*, 413 S.W.3d at 919 (Cunningham, J., dissenting) ("[If hospitals always have a duty even where harm is not foreseeable,] [t]he cost

6

of health care . . . will be affected as insurance premiums rise. Naturally, this cost is going to be passed to the consumer."). We are wary to discourage business development and consumer access in our communities which may already be struggling.

In the case at bar, the Court of Appeals erred when it held that, pursuant to *Shelton*, determining what constituted a duty of reasonable care in the context of third-party criminal acts did not require a foreseeability analysis. The trial court was correct in its application of *Napper* and its progeny. To reiterate: a landowner has a duty to protect patrons from third-party acts only if he or she "knows of activities or conduct of other patrons or third persons which would lead a reasonably prudent person to believe or anticipate that injury to a patron might be caused," and if he or she can reasonably safeguard against them. *Napper*, 310 S.W.2d at 271. As with the restriction of foreseeability in open-and-obvious cases, this rule for third-party acts is consistent with the rule offered in the Restatement (Second) of Torts (1965) § 344, which states:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>     (a) discover that such acts are being done or are likely to be done, or
>     (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Comment (f) following this rule states that "[s]ince the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any

7

care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur." The Restatement (Second) thus mirrors this Court's holding in *Napper*, which remains good law under our holding today.

Because the trial court applied the correct law below, and because no material facts are at issue, we undertake a de novo review of the trial court's grant of summary judgment. *Stilger v. Flint*, 391 S.W.3d 751, 753 (Ky. 2013) (citations omitted). Whether Wal-Mart had a duty to protect Reeves from the third-party criminal act that befell her hinges upon whether such a crime was foreseeable to Wal-Mart. *Napper*, 310 S.W.2d at 271. Whether that crime was foreseeable, in turn, depends upon whether the crime could have been anticipated by the property owner. *See id.* For example, if crimes of a sufficiently similar kind occurred sufficiently close in time to the one at issue, then the crime at issue would have been foreseeable. *See id.*

Based on the evidence admitted, Wal-Mart could not have anticipated this third-party criminal act occurring against Reeves on its premises. Here, Reeves needed to provide evidence that a third-party criminal act involving attempted robbery and assault were reasonably foreseeable to Wal-Mart. Reeves provided only two examples of crimes of a similar nature to the one at issue in this case, one from 2001 and one from 2012. Both instances were purse snatchings occurring on the property. All other instances reported were either between parties known to each other and involved in a dispute, or between loss prevention staff and thieving customers, or were crimes that were initiated off Wal-Mart's premises.

Reeves did not provide evidence that the two purse snatchings, one of which occurred over 15 years before her own incident, involved assaultive behavior. So, even to the extent that the instances were similar, they failed to truly compare to the crime at issue in this case. Additionally, because they occurred so distantly in time (both from each other and from Reeves's incident), we cannot hold that they established a pattern that could lead Wal-Mart to anticipate this kind of crime.

The CAP Index, Inc. Crimecast Report is similarly unavailing. The report indicates that Fayette County has a higher-than-average crime rate, including for assault and robbery. However, it provides no statistical information *specific to* Wal-Mart's actual premises. In fact, in a mapped diagram of the six-mile radius around the Nicholasville Wal-Mart,[3] the report indicates that although downtown Lexington (contained within the radius) has a higher-than-average crime rate, the location of the Nicholasville Wal-Mart itself has a *lower*-than-national-average crime rate. Because foreseeability is specific to the premises at issue, this report shows, if anything, that Wal-Mart could have anticipated even *less* crime than surrounding businesses. Because this report and the history of crime presented by Reeves do not indicate that random, night-time parking lot assault and robbery are foreseeable to Wal-Mart, Wal-Mart had no duty to Reeves to protect her from such crimes. As such, Wal-Mart was

---

[3] It appears that the six-mile radius analysis is the basis for the Nicholasville Wal-Mart's "CAP Index Score" at 191, which is higher than state and national averages for crime. However, as explained above, the scoring mechanism is over-inclusive for the purposes of our foreseeability analysis.

9

"entitled to a judgment as a matter of law," and summary judgment was appropriate. *Pearson ex rel. Trent*, 90 S.W.3d at 49.

## III. CONCLUSION

Business owners do not have a universal duty to protect all visitors against all third-party acts. Instead, trial courts must consider whether such acts are foreseeable when determining whether a business has a duty to protect against those acts. Such an analysis is the only means by which a landowner can justly be held accountable for harm caused by people out of their control on their property.

In the case at bar, the trial court heard evidence that the kind and volume of third-party criminal acts on Wal-Mart's premises in the past did not create a duty of reasonable care to protect Reeves against the crime she suffered. Since the third-party criminal acts were not reasonably foreseeable, the trial court did not err in granting Wal-Mart's motion for summary judgment.

Accordingly, we reverse the Court of Appeals and reinstate the trial court's judgment.

Bisig, Conley, Keller, Lambert, Nickell and Thompson, JJ., sitting. All concur. VanMeter, C.J., not sitting.

10

COUNSEL FOR APPELLANTS:

Kyle Ryan Bunnell
Christopher Rennie Cashen
Dinsmore & Shohl LLP


COUNSEL FOR APPELLEE:

Stephen M. O'Brien
David Seth Coomer
O'Brien Batten & Kirtley, PLLC


COUNSEL FOR AMICUS, KENTUCKY DEFENSE COUNSEL, INC.:

Ryan Daniel Nafziger
Phillips Parker Orberson & Arnett, PLC